**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PEIFA XU, Individually and On Behalf of All Others Similarly Situated, | ) ) ) **Case No.** |
| Plaintiff, | ) ) ) |
| v. | ) **CLASS ACTION COMPLAINT** ) ) |
| GRIDSUM HOLDING INC., GUOSHENG WI and PENG ZHANG, | ) **JURY TRIAL DEMANDED** ) ) |
| Defendants. | ) ) |

**CLASS ACTION COMPLAINT**

Plaintiff Peifa Xu ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Gridsum Holding Inc. ("Gridsum" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Gridsum securities between April 27, 2017 through April 20, 2018, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue

1

remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Gridsum Holding, Inc. is a holding company that designs and develops sophisticated data analysis software for multinational and domestic enterprises and government agencies in China.  The Company offers software that allows customers to collect and analyze information that is collected, indexed, and stored in an organized manner.

3.      Founded in 2005, Gridsum is headquartered in Beijing, China, and its ADRs trade on the NASDAQ Global Select Market ("NASDAQ") under the ticker symbol "GSUM."

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Gridsum lacked effective internal control over financial reporting; (ii) consequently, Gridsum's financial statements were inaccurate and misleading, and did not fairly present, in all material respects, the financial condition and results of operations of the Company; and (iii) as a result of the foregoing, Gridsum's public statements were materially false and misleading at all relevant times.

5.      On April 23, 2018, Gridsum issued a press release entitled "Gridsum Reports Suspension of Audit Report on Financial Statements," announcing that its "audit report for the Company's financial statements for the year ended December 31, 2016 should no longer be relied upon."  According to the press release, Gridsum's auditor identified certain issues in conducting its audit of Gridsum's financial results for the year ended December 31, 2017.  Those issues related to "certain revenue recognition, cash flow, cost, expense items, and their underlying documentation which [the auditor] had previously raised" with Gridsum.

6.     On this news, Gridsum's ADR price fell $1.17, or 16.04%, to close at $6.12 on April 23, 2018.

7.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

9.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act.

10.    Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b).  Gridsum's ADRs trade on the NASDAQ, located within this Judicial District.

11.    In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

12.    Plaintiff, as set forth in the attached Certification, acquired Gridsum's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.    Defendant Gridsum is headquartered in China, with principal executive offices located at Jade Palace Hotel Office Building, 76 Zhichun Road Haidian District, 8th Floor,

Beijing, China 100086.  Gridsum's ADRs trade on the NASDAQ under the ticker symbol "GSUM."

14.     Defendant Guosheng Qi ("Qi") founded and has served at all relevant times as the Company's Chief Executive Officer ("CEO") and Chairman.

15.     Defendant (Michael) Peng Zhang ("Zhang") has served as the Company's Chief Financial Officer ("CFO") since February 2014.

16.     The Defendants referenced above in ¶¶ 14-15 are sometimes referred to herein collectively as the "Individual Defendants."

17.     The Individual Defendants possessed the power and authority to control the contents of Gridsum's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

18.     Gridsum Holding, Inc. is a holding company that designs and develops sophisticated data analysis software for multinational and domestic enterprises and government agencies in China.  The Company offers software that allows customers to collect and analyze information that is collected, indexed, and stored in an organized manner.

4

**Materially False and Misleading Statements Issued During the Class Period**

19.     The Class Period begins on April 27, 2017, when Gridsum filed an Annual Report on Form 20-F with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended December 31, 2016 (the "2016 20-F"). For fiscal year 2016, Gridsum reported a net loss of $67.69 million, or $6.47 per diluted share, on revenue of $400.26 million, compared to a net loss of $48.82 million, or $8.52 per diluted share, on revenue of $234.84 million for fiscal year 2015.

20.     In the 2016 20-F, the Company stated in relevant part:

Our discussion and analysis of our financial condition and results of operations are based upon our consolidated financial statements, which have been prepared in accordance with U.S. GAAP, appearing elsewhere in this annual report. The preparation of these consolidated financial statements requires us to make estimates, judgments and assumptions that affect the reported amounts of assets, liabilities, revenues, expenses and related disclosure of contingent assets and liabilities. We evaluate these estimates, judgments and assumptions on an on-going basis for taxes.

Our estimates are based on historical experience and various other assumptions that we believe to be reasonable under the circumstances. These estimates form the basis for our judgments about the carrying values of assets and liabilities that are not readily apparent from other sources. Actual results may differ materially from such estimates under different assumptions or conditions.

21.     The 2016 20-F contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 by Defendants Qi and Zhang, stating, in relevant part, that the information contained in the 2016 20-F "fairly presents, in all material respects, the financial condition and results of operations of the Company."

22.     On May 26, 2017, Gridsum issued a press release, filed as Exhibit 99.1 to Form 6-K with the SEC, entitled "Gridsum Reports Unaudited First Quarter 2017 Financial Results." The press release stated in relevant part:

"The first quarter of 2017 was another solid quarter with robust financial and operating results," stated Mr. Guosheng Qi, Chief Executive Officer of Gridsum. "We are pleased to see our topline continue its strong growth momentum,

primarily driven by solid customer base expansion, which we target to grow by 30-40% in 2017, and a steady increase in Average Revenue Per User ("ARPU").

***

Mr. Michael Zhang, Chief Financial Officer of the Company, commented, "In the first quarter of 2017, our net revenues increased by 57.3% year over year to RMB100.6 million, driven by a solid 51.5% increase in our Enterprise revenues and 112.4% increase in e-Government and other revenues. The significant growth of our e-Government and other business was primarily driven by the better-than-expected performance in all the three revenue streams of e-Government, new media and legal services with legal services, in particular, exhibiting exceptional growth. To fuel further topline growth, we will leverage our superior sales efficiency and continue our targeted investment in sales and marketing to broaden our market visibility. R&D will remain another key area of focused investment to strengthen our technology leadership and drive expansion into new products and services."

23.     On August 25, 2017, Gridsum issued a press release, filed as Exhibit 99.1 to Form 6-K with the SEC, entitled "Gridsum Reports Unaudited Second Quarter 2017 Financial Results."  The press release stated in relevant part:

"We delivered strong financial and operating results once again in the second quarter of 2017," stated Mr. Guosheng Qi, Chief Executive Officer of Gridsum. "Our topline maintained its robust growth trajectory, primarily driven by solid customer base expansion and increased Average Revenue Per User ('ARPU'). We remain on target to grow our customer count by 30% to 40% in 2017. In particular, we were very effective in cross-selling and upselling our products and services to existing clients.

***

Mr. Michael Zhang, co-Chief Financial Officer of the Company, commented, "In the second quarter of 2017, our net revenues increased by 43.8% year over year to RMB120.9 million, driven by a 34.6% increase in our Enterprise revenues and a 123.9% increase in e-Government and other revenues. Although our gross margin declined from 87.2% to 83.3% year over year, it is within our budgeted range and expectations as we increased our investment in optimizing and enhancing the performance and security of our system and database. During the quarter, we also increased our spending in sales and marketing as well as research and development, consistent with our strategy of augmenting our brand recognition and solidifying our technology leadership. At the same time, we are carefully monitoring the ROI of our investments and making sure that our cost structure is optimized for efficiency. Going forward, we will continue to prudently invest in our future growth."

24.     On November 29, 2017, Gridsum issued a press release, filed as Exhibit 99.1 to Form 6-K with the SEC, entitled "Gridsum Reports Unaudited Third Quarter 2017 Financial Results." The press release stated in relevant part:

> Mr. Guosheng Qi, Chief Executive Officer of Gridsum, commented, "We delivered another strong quarter of growth driven by our continued effectiveness at attracting new clients, including companies such as Dyson, Domino's, Stanley Black and Decker, Union Life, Viking Cruise, and others, to our core marketing automation business, and cross selling and upselling additional products and features which drove growth of average revenue per customer ('ARPU') within our expanding portfolio of clients. We have also made considerable progress in our strategy to develop solutions for new verticals, such as an intelligent customer relationship management system (CRM) which is anticipated to be launched next month and the industrial internet of things (IIoT). In August, Mr. Xijian Liu joined us as our chief strategy officer. He also heads our newly established IIoT division. Mr. Liu's more than three decades of IT and strategic management experience at one of the largest state-owned petrochemical companies in China lays a solid foundation for our rapid development in the IIoT space. Moving forward, we will continue to consolidate long-term relationships with our clients and delve deeper into their businesses by offering solutions to multiple parts of their organizations to help them with their digital transformations. We continue to target having around half of our growth being driven by new client additions, and around half from ARPU expansion."

> ***

> Mr. Michael Zhang, co-Chief Financial Officer of Gridsum, concluded, "During the quarter, enterprise revenues increased by 47.8% while e-Government and other revenues increased by an even faster 98.0%, albeit from a smaller base. We continue to invest for the future while carefully balancing growth opportunities with a path to profitability. We believe that with rapid top line growth our operating leverage will become more significant. We have already started to see solid leverage from our sales and marketing ('S&M') spending, and we expect to see greater stability in our research and development ('R&D') and general and administrative ('G&A') spending, which should put us on a stronger path to profitability. R&D remains a critical element of our business to ensure that we maintain our leading position in the enterprise SaaS space over the short, medium and long term. As such, we expect that R&D spending, in absolute terms, to continue growing at a sustainable level in the coming quarters."

25.     The statements referenced in ¶¶ 19-24 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that:

(i) Gridsum lacked effective internal control over financial reporting; (ii) consequently, Gridsum's financial statements were inaccurate and misleading, and did not fairly present, in all material respects, the financial condition and results of operations of the Company; and (iii) as a result of the foregoing, Gridsum's public statements were materially false and misleading at all relevant times.

## The Truth Begins to Emerge

26.     On April 23, 2018, Gridsum issued a press release entitled "Gridsum Reports Suspension of Audit Report on Financial Statements," announcing that its "audit report for the Company's financial statements for the year ended December 31, 2016 should no longer be relied upon." The press release further stated in relevant part:

> BEIJING, April 23, 2018 — Gridsum Holding Inc. ("Gridsum" or "Company") (NASDAQ:GSUM), a leading provider of cloud-based big-data analytics and artificial intelligence ("AI") solutions in China, today reported that on April 20, 2018, *PricewaterhouseCoopers Zhong Tian LLP ("PwC"), the Company's independent registered public accounting firm, notified the Company's Board of Directors and Audit Committee that PwC's audit report for the Company's financial statements for the year ended December 31, 2016 should no longer be relied upon. Therefore, investors should not rely on that audit opinion.*
>
> *In its letter, dated April 16, 2018 ("PwC Letter"), PwC informed the Company of certain issues it had identified in conducting its audit of the Company's financial results for the year ended December 31, 2017. Those issues relate to certain revenue recognition, cash flow, cost, expense items, and their underlying documentation which PwC had previously raised with the Company.* Of the items specifically identified in the PwC Letter, the Company estimates a 2016 revenue impact of approximately RMB 2 million and a 2016 expense impact of approximately RMB 6 million. There can be no assurance that the Company or PwC will not identify more items as the Company finalizes the review. The Audit Committee Chairman and the Company's Co-Chief Financial Officer have discussed the topics covered by the PwC Letter with representatives of PwC. The Company's Audit Committee is fully investigating these issues with assistance from external legal and accounting advisors and is working diligently toward an expeditious conclusion of the investigation. The Company undertakes no obligation to update its disclosures on this topic until the Audit Committee investigation is complete. Because PwC will not be in a position to issue reports on the Company's financial statements until the Audit Committee completes its review and PwC is satisfied that any outstanding issues have been satisfactorily

addressed, *the Company's 20-F filing will be delayed until such audit is completed.*

Mr. Guosheng Qi, Chief Executive Officer of Gridsum, commented, "For many years, starting well before our IPO, we have been committed to transparency and good corporate governance and remain so. When we became aware of certain accounting issues, we immediately took measures to address this situation. Our Audit Committee started an investigation and appointed a respected global law firm to conduct that review with the assistance of 'big four' forensic accounting specialists. This work is still ongoing. I have full confidence in the integrity and professionalism of all parties involved and we hope to report our results as soon as practicable after that work concludes.

Meanwhile, we continue to make good progress in our efforts to grow the Company and expand our product range and client base. Our fundamentals and business prospects remain robust, and we look forward to continuing to work toward increasing shareholder value."

(Emphasis added.)

27.     On this news, Gridsum's ADR price fell $1.17, or 16.04%, to close at $6.12 on April 23, 2018.

28.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

29.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Gridsum securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

30.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Gridsum securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Gridsum or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

31.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

32.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

33.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Gridsum;

- whether the Individual Defendants caused Gridsum to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Gridsum securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

34.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

35.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Gridsum  securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Gridsum securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

36.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

11

37.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

<u>COUNT I</u>

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

38.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

39.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

40.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Gridsum securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Gridsum securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

41.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Gridsum securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Gridsum's finances and business prospects.

42.     By virtue of their positions at Gridsum , Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

43.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Gridsum, the Individual Defendants had knowledge of the details of Gridsum's internal affairs.

44.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Gridsum.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Gridsum's

businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Gridsum securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Gridsum's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Gridsum securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

45.     During the Class Period, Gridsum securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Gridsum securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Gridsum securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Gridsum securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

46.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

47.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases,

acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

48.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

49.     During the Class Period, the Individual Defendants participated in the operation and management of Gridsum, and conducted and participated, directly and indirectly, in the conduct of Gridsum's business affairs.  Because of their senior positions, they knew the adverse non-public information about Gridsum's misstatement of income and expenses and false financial statements.

50.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Gridsum's financial condition and results of operations, and to correct promptly any public statements issued by Gridsum which had become materially false or misleading.

51.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Gridsum disseminated in the marketplace during the Class Period concerning Gridsum's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Gridsum to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Gridsum within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Gridsum securities.

52.     Each of the Individual Defendants, therefore, acted as a controlling person of Gridsum.  By reason of their senior management positions and/or being directors of Gridsum, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Gridsum to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Gridsum and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

53.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Gridsum.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: April 25, 2018                                    Respectfully submitted,

                                                        **POMERANTZ LLP**

                                                        */s/ Jeremy A. Lieberman*
                                                        Jeremy A. Lieberman

J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
        ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

# CERTIFICATION PURSUANT
# TO FEDERAL SECURITIES LAWS

1.   I, Xu Peifa, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.   I have reviewed a Complaint against Gridsum Holding Inc (NASDAQ: GSUM, hereafter referred as the "Company") and authorize the filing of a comparable complaint on my behalf.

3.   I did not purchase or acquire the "Company" securities at the direction of plaintiffs counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired the "Company" securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.   To the best of my current knowledge, the attached sheet lists all of my transactions in the "Company" securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

1

8.  I declare under penalty of perjury that the foregoing is true and correct.


Executed  2018 - 04 - 24

       (Date)


               Xu Peifa
              (Signature)


               Xu Peifa
           (Type or Print Name)

2

**GRIDSUM HOLDING INC. (GSUM)**                                                     **Xu, Peifa**

## LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHARES/UNITS | PRICE PER SHARES/UNITS |
|------|------------------|------------------------|------------------------|
| 3/16/2018 | Purchase | 2,000 | $9.2690 |
| 3/22/2018 | Purchase | 8,000 | $8.5000 |
| 4/10/2018 | Purchase | 1,000 | $8.0400 |
| 4/16/2018 | Purchase | 5,000 | $7.7000 |