**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PEIFA XU, Individually and On Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>GRIDSUM HOLDING INC., GUOSHENG QI, MICHAEL PENG ZHANG, RAVI SARATHY, GUOFA YU, PERRY LIN CHUI, XIANG FAN, YANCHUN BAI, XUDONG GAO, THOMAS ADAM MELCHER, PETER ANDREW SCHLOSS, PRICEWATERHOUSECOOPERS ZHONG TIAN LLP, GOLDMAN SACHS (ASIA) L.L.C., CITIGROUP GLOBAL MARKETS INC., and STIFEL, NICOLAUS & COMPANY INCORPORATED,<br><br>                    Defendants. | Case No.: 1:18-cv-03655 (ER) |

**PLAINTIFFS' MEMORANDUM
OF LAW IN OPPOSITION TO DEFENDANTS
GUOSHENG QI, MICHAEL ZHANG, AND RAVI SARATHY'S PARTIAL
MOTION TO DISMISS THE THIRD AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | PRELIMINARY STATEMENT ................................................................................... | 1 |
| II. | SUMMARY OF RELEVANT FACTS AND PROCEDURAL HISTORY ..................... | 3 |
| | A. The Materially False and Misleading April 2018 Press Release ........................... | 3 |
| III. | ARGUMENT ................................................................................................................ | 4 |
| | A. Relevant Legal Standards ...................................................................................... | 4 |
| | B. The Moving Defendants are "Makers" of the April 2018 Press Release with Ultimate Control and Authority ...................................................................... | 4 |
| | C. Even If the Moving Defendants Were Not "Makers" of the Statements With "Ultimate Control" Over the April 2018 Press Release, They Can be Held Liable As Corporate Officers Intimately Involved With Gridsum's Day to Day Activities .......................................................................................... | 10 |
| IV. | CONCLUSION ............................................................................................................ | 12 |

# TABLE OF AUTHORITIES

**Cases**

*City of Pontiac Gen. Emps. Ret. Sys. v. Lockhead Martin Corp.*,
   875 F. Supp. 2d 359 (S.D.N.Y. 2012) .................................................................................. 11

*City of Roseville Emps. Ret. Sys. v. EnergySolutions, Inc.*,
   814 F. Supp. 2d 395 (S.D.N.Y. 2011) ................................................................................ 2, 6

*FIH, LLC v. Found. Capital Partners, LLC*,
   176 F. Supp. 3d 52 (D. Conn. 2016) .................................................................................... 11

*In re Banco Bradesco S.A. Sec. Litig.*,
   277 F. Supp. 3d 600, 663 (S.D.N.Y. 2017) ........................................................................... 9

*In re Barrick Gold Sec. Litig.*,
   No. 13 Civ. 3851 (SAS), 2015 U.S. Dist. LEXIS 71136 (S.D.N.Y. June 2, 2015) ......... 6, 11

*In re CannaVest Corp. Sec. Litig.*,
   307 F. Supp. 3d 222 (S.D.N.Y. 2018) ...................................................................... 7, 11, 12

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*,
   C.A. No. 16-6509 (ES) (CLW), 2020 U.S. Dist. LEXIS 98830
   (D.N.J. June 5, 2020) ........................................................................................................... 10

*In re Fannie Mae 2008 Sec. Litig.*,
   891 F. Supp. 2d 458 (S.D.N.Y. 2012) ................................................................................... 5

*In re Lehman Bros. Sec. & ERISA Litig.*,
   No. 09 MD 2017 (LAK), 2013 U.S. Dist. LEXIS 152801
   (S.D.N.Y. Oct. 22, 2013) ....................................................................................................... 5

*In re Merck & Co., Sec. Derivative & "ERISA" Litig.*,
   MDL No. 1658, 2011 U.S. Dist. LEXIS 87578 (D.N.J. Aug. 8, 2011) ................................ 9

*In re Nevsun Res. Ltd.*,
   No. 12 Civ. 1845 (PGG), 2013 U.S. Dist. LEXIS 162048
   (S.D.N.Y. Sept. 27, 2013) ................................................................................................... 11

*In re Pfizer Sec. Litig.*,
   No. 04 Civ. 9866 (LTS)(HBP), 2012 U.S. Dist. LEXIS 39454
   (S.D.N.Y. Mar. 22, 2012) ............................................................................................. 2, 5, 8

*In re Satyam Computer Servs. Sec. Litig.*,
   915 F. Supp. 2d 450 (S.D.N.Y. 2013) ................................................................................. 11

*In re Stillwater Capital Partners Inc.*,
   858 F. Supp. 2d 277 (S.D.N.Y. 2012) ................................................................................... 9

*In re Valeant Pharm. Int'l, Inc. Sec. Litig.*,
    C.A. No. 15-7658 (MAS) (LHG), 2017 U.S. Dist. LEXIS 66037
    (D.N.J. Apr. 28, 2017) ........................................................................................................ 7

*Jackson Cty. Emps. Ret. Sys. v. Ghosn*,
    No. 3:18-cv-01368, 2020 U.S. Dist. LEXIS 243724 (M.D. Tenn. Dec. 29, 2020) ............ 7

*Janus Capital Grp., Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011) ................................................................................................... passim

*Krasner v. Rahfco Funds LP*,
    No. 11 CV 4092 (VB), 2012 U.S. Dist. LEXIS 134353 (S.D.N.Y. Aug. 9, 2012) ............ 6

*Levy v. Maggiore*,
    48 F. Supp. 3d 428 (S.D.N.Y. 2014) .............................................................................. 6, 11

*Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
    No. CV: 10-2847-IPJ, 2011 U.S. Dist. LEXIS 93873 (N.D. Ala. Aug. 23, 2011) ............. 9

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
    797 F.3d 160 (2d Cir. 2015) .............................................................................................. 4, 7

*Meyer v. JinkoSolar Holdings Co.*,
    761 F.3d 245 (2d Cir. 2014) .................................................................................................. 4

*Pac. Inv. Mgmt. Co. v. Mayer Brown LLP ("PIMCO")*,
    603 F.3d 144 (2d Cir. 2010) .................................................................................................. 6

*SEC v. e-Smart Techs., Inc.*,
    31 F. Supp. 3d 69 (D.D.C. 2014) ......................................................................................... 9

*Special Situations Fund III QP, L.P. v. Brar*,
    No. 14-cv-04717-SC, 2015 U.S. Dist. LEXIS 38825 (N.D. Cal. Mar. 26, 2015) .............. 9

*Steginsky v. Xcelera Inc.*,
    741 F.3d 365 (2d Cir. 2014) .................................................................................................. 4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ............................................................................................................... 4

*United States SEC v. Brown*,
    878 F. Supp. 2d 109 (D.D.C. 2012) ............................................................................... 7, 9

*United States SEC v. Carter*,
    No. 10 C 6145, 2011 U.S. Dist. LEXIS 136599 (N.D. Ill. Nov. 28, 2011) ................ 5, 7, 9

Lead Plaintiff William Barth and named plaintiff Xuechen Li (together, "Plaintiffs") respectfully submit this Memorandum of Law in Opposition to the Partial Motion to Dismiss filed by Defendants Guosheng Qi, Michael Zhang, and Ravi Sarathy's (the "Motion") (ECF No. 246).

## I.  PRELIMINARY STATEMENT

The Motion is addressed to one claim in the Third Amended Class Action Complaint: namely the Moving Defendants[1] liability for having failed to disclose in the April 23, 2018 press release (the "April 2018 Press Release"), that "PwC had [already] told Gridsum that it could no longer 'rely upon the representations of management.'"  The Court, in its March 30, 2020 Opinion and Order, held that the failure to include that disclosure in the press release properly pleads an omission (ECF No. 201, at 22).  As a result, the Court denied Gridsum's motion to dismiss the Exchange Act claims as to the 2016 financials (not at issue in this motion) and the April 2018 Press Release. *Id.* at 23.  The Moving Defendants have not moved to dismiss the Exchange Act claims asserted against them in the Complaint arising out of the misrepresentations and omissions in the March 15, 2017 press release and 2016 Form 20-F (together, the "2016 Financials"), so regardless of the Court's decision on this Motion, those Exchange Act claims against the Moving Defendants will remain.

The thrust of the Motion is that because the Court found that defendant Thomas Melcher ("Melcher") was not liable as a maker of the April 2018 Press Release, so too are the Moving Defendants not liable because they too are also not makers of the statements in the April 2018

---

[1] Unless otherwise stated, all references to "¶__" are to the Third Amended Class Action Complaint (the "TAC," ECF No. 209).  All references to "DB" refer to the memoranda of law in support of the Motion filed by defendants Guosheng Qi ("Qi"), Michael Zhang ("Zhang"), and Ravi Sarathy ("Sarathy," and with Qi and Zhang, the "Moving Defendants") (ECF No. 247).  Capitalized terms not defined herein shall have the same meanings ascribed to them in the TAC.  Unless otherwise noted, all emphasis is added and internal quotations and citations are omitted.

Press Release. The Moving Defendants are wrong. As discussed below, Qi, Zhang, and Sarathy are not similarly situated with Melcher.

The Moving Defendants and the TAC allegations pertaining to them are distinctly different from those pertaining to Melcher, who was a member of the Gridsum board of directors, but not a top-level senior executive like the Moving Defendants. The TAC allegations against the Moving Defendants satisfy not only the group-pleading doctrine which this Circuit explicitly recognizes survived *Janus*, but also *Janus* and its progeny. *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011).[2]

The April 2018 Press Release disclosed that PwC notified the Company's board of directors and audit committee that PwC's audit report for the Company's financial statements for the year ended December 31, 2016, should no longer be relied upon, and that PwC had identified certain issues in conducting its audit for the Company's financial results for the year ended December 31, 2017. Qi and the co-CFO are specifically mentioned and/or quoted in the press release, Zhang and Sarathy were the co-CFOs. Zhang signed the Form 6-K attaching the April 2018 Press Release filed with the SEC. Taken together, the allegations in the TAC make clear that the Moving Defendants had ultimate authority over the April 2018 Press Release. *Janus*, 564 U.S. at 142-43 ("attribution within a statement *or* implicit from surrounding circumstances is strong evidence that a statement was made by [the defendant"). Unlike Melcher, each Moving Defendant held a senior executive position at Gridsum and based on the group pleading doctrine and facts alleged, is clearly alleged to have been a maker of the April 2018 Press Release.

---

[2] Statements can be attributed to more than one individual or entity. *City of Roseville Emps. Ret. Sys. v. EnergySolutions, Inc*., 814 F. Supp. 2d 395, 417 n.9 (S.D.N.Y. 2011); s*ee also In re Pfizer Sec. Litig.*, No. 04 Civ. 9866 (LTS)(HBP), 2012 U.S. Dist. LEXIS 39454, at *19 (S.D.N.Y. Mar. 22, 2012) ("*Janus* did not [, however] alter the well-established rule that a corporation can act only through its employees and agents.").

## II. SUMMARY OF RELEVANT FACTS[3] AND PROCEDURAL HISTORY

### A. The Materially False and Misleading April 2018 Press Release

On April 23, 2018, the Company shocked the market in announcing that PwC had notified Gridsum that the "audit reported for the Company's financial statements for the year ended December 31, 2016 should no longer be relied upon" as there were issues found with the Company's revenue recognition, cash flow, costs, expenses, and documentation underlying these issues. ¶¶ 99, 213. The April 2018 Press Release also stated, *inter alia*, that:

- The Audit Committee Chairman and the Company's co-Chief Financial Officer have discussed the topics covered by the PwC Letter with representatives of PwC;

- Mr. Guosheng Qi, Chief Financial Officer, commented, 'For many years, starting well before our IPO, we have been committed to transparency and good corporate governance and remain so. When we became aware of certain accounting issues, we immediately took measures to address this situation. Our Audit Committee started an investigation and appointed a respected global law firm to conduct that review with the assistance of 'big four' forensic accounting specialists. This work is still ongoing. I have full confidence in the integrity and professionalism of all parties involved and we hope to report our results as soon as practicable after that work concludes. Meanwhile, we continue to make good progress in our efforts to grow the Company and expand our product range and client base. Our fundamentals and business prospects remain robust, and we look forward to continuing to work toward increasing shareholder value.

¶ 99. The April 2018 Press Release was also filed with the SEC as Exhibit 99.1 to a Form 6-K which was signed by Zhang. *Id*.

On this news, Gridsum's ADSs declined $1.17 per share, or 16.04%, to close at $6.12 on April 23, 2018. ¶ 100. Intra-day trading on April 23, 2018, reached a share price low of $3.68, a 49% decrease from the share price low on April 20, 2018. *Id.*

---

[3] Due to the limited nature of the Moving Defendants' Motion, Plaintiffs respectfully refer the Court to the more extensive Statement of Facts as set forth in Plaintiffs' Memorandum of Law in Opposition to Defendants Gridsum Holding Inc. and Thomas Melcher's Motion to Dismiss the Second Amended Class Action Complaint (ECF No. 162) and Plaintiffs' Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss the Third Amended Class Action Complaint (ECF No. 221), and only recite facts relevant to the issues herein.

The April 2018 Press Release was materially false and misleading because it failed to disclose that, as later revealed in the Company's 2017 Form 20-F, PwC "also advised that the issues identified raised questions related to its ability to rely upon the representations of management." ¶ 214.

### III. ARGUMENT

#### A. Relevant Legal Standards

On a Rule 12(b)(6) motion to dismiss, a court must "accept all factual allegations in the complaint as true," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), and "draw[] all reasonable inferences in the plaintiff's favor." *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014). An "alleged fraud need only be *plausible* based on the complaint; it need not be more likely than other possibilities." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 174 (2d Cir. 2015) (emphasis in original). "[D]ismissal is appropriate only where [plaintiffs] can prove no set of facts consistent with the complaint that would entitle them to relief." *Meyer v. JinkoSolar Holdings Co.*, 761 F.3d 245, 249 (2d Cir. 2014).

#### B. The Moving Defendants are "Makers" of the April 2018 Press Release with Ultimate Control and Authority

The Moving Defendants contend that they cannot be held liable for the statements made in the April 2018 Press Release because they were not "makers" of the statements, similar to this Court's finding for defendant Melcher. DB at 6-10. The "maker" analysis and decision applied to Melcher, a director of Gridsum, is not the same for the Moving Defendants who were the CEO and Co-CFOs of the Company. As noted by the Moving Defendants (DB at 6), *Janus* held that "the maker of a statement [for the purposes of SEC Rule 10b-5] is the person or entity with ***ultimate authority*** over the statement, including its content and whether and how to communicate it."

4

*Janus*, 564 U.S. at 142.  Here, it is plainly and adequately alleged in the TAC that the Moving Defendants are "makers" of the April 2018 Press Release and the statements therein.

"In the post-*Janus* world, an executive may be held accountable where the executive had ultimate authority over the company's statement; signed the company's statement; ratified and approved the company's statement; or where the statement is attributed to the executive."  *In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458, 473 (S.D.N.Y. 2012).  The TAC adequately alleges that each of the Moving Defendants meet this standard and can be held liable for the April 2018 Press Release misstatements.

First, the TAC explicitly states that the Moving Defendants participated in the preparation and issuance of the April 2018 Press Release (¶ 269) and ***controlled*** the content (*e.g.*, ¶¶ 273, 280). *See In re Lehman Bros. Sec. & ERISA Litig.*, No. 09 MD 2017 (LAK), 2013 U.S. Dist. LEXIS 152801, at *8 (S.D.N.Y. Oct. 22, 2013) (finding CEO and CFO to "undoubtedly" have "ultimate authority"); *Pfizer*, 2012 U.S. Dist. LEXIS 39454, at *20 (in accord with *Janus*, although statements not specifically attributed to the defendants, it is enough that complaint alleges defendants liable for press release statements because they "were involved in drafting, reviewing and/or disseminating the false and misleading financial statements that were issued by Pfizer, approved or ratified these statements and, therefore, adopted them as their own."); *United States SEC v. Carter*, No. 10 C 6145, 2011 U.S. Dist. LEXIS 136599, at *7 (N.D. Ill. Nov. 28, 2011) ("Like a "speaker," defendant may not have authored the contents of the press releases but was made aware of them and knew that he would be held accountable.  Thus, the allegation that defendant, as the company's CEO, approved the press releases is sufficient to make defendant the 'speaker.').

Second, the TAC pleads additional "indicia of control" sufficient to satisfy *Janus*.  *See,*

5

*e.g.*, *City of Roseville*, 814 F. Supp. 2d at 418 ("Indeed, *Janus* recognized that attribution could be 'implicit from surrounding circumstances.' Here, where the Registration Statements contain so many indicia of control, the lack of an explicit statement that ENV was speaking through the Registration Statements does not control the answer to the question of whether it made those statements."). Similar to *City of Roseville*, the April 2018 Press Release shows that the Moving Defendants were "speaking through" it. The April 2018 Press Release discusses the Company's financial statements and an impact on 2016 reported financials that the Moving Defendants themselves certified with the filing of the 2016 Form 20-F (¶¶ 201, 231). Further, the issues found by PwC related to "revenue recognition, cash flow, cost, expense items, and their underlying documentation which PwC had previously raised with the Company." ¶ 99. The Moving Defendants served as the CEO and co-CFOs of the Company, *i.e.,* those with "ultimate control" over Gridsum's financials and communications with the public. In fact, the April 2018 Press Release even states that the "Audit Committee Chairman and the Company's ***Co-Chief Financial Officer*** have discussed the topics covered by the PwC Letter with representatives of PwC."[4] ¶ 99.

---

[4] The Moving Defendants' argument that it is not clear whether this statement references Sarathy or Zhang as it only references one co-CFO is speculative at best. DB at 7-8. It could also be very likely that there was a typo and the "s" was not included by mistake, meaning it should have referred to both Sarathy and Zhang. In fact, that would be the more logical conclusion as it would fall under both co-CFOs' purview to discuss something as significant as the PwC Letter with the Audit Committee. "At the pleading stage, these facts are entirely within the control of defendants." *In re Barrick Gold Sec. Litig.*, No. 13 Civ. 3851 (SAS), 2015 U.S. Dist. LEXIS 71136, at *8 (S.D.N.Y. June 2, 2015). As discussed herein, the TAC includes numerous allegations suggesting Sarathy had "ultimate control" over the April 2018 Press Release. *Pac. Inv. Mgmt. Co. v. Mayer Brown LLP ("PIMCO")*, 603 F.3d 144 (2d Cir. 2010), relied upon by the Moving Defendants is inapposite. DB at 7. In *PIMCO* the "actors" in question were not part of the company but were a law firm and one of its attorneys who drafted loan documents and reviewed offering documents for Refco, the company accused of fraud, and were not mentioned in any documents. 603 F.3d at 149-50, 158; *see also Levy v. Maggiore*, 48 F. Supp. 3d 428, 449 n.17 (S.D.N.Y. 2014) (discussing and distinguishing *PIMCO*). Similarly, *Krasner v. Rahfco Funds LP*, No. 11 CV 4092 (VB), 2012 U.S. Dist. LEXIS 134353 (S.D.N.Y. Aug. 9, 2012) (DB at 7-8) dismissed claims alleged against third parties, not corporate insiders.

Third, Qi is quoted in the April 2018 Press Release, stating, *inter alia*, "[w]hen *we* became aware of certain accounting issues, *we* immediately took measures to address this situation." *In re CannaVest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 240 (S.D.N.Y. 2018) (where press release contained statements by defendant, defendant was responsible); *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, C.A. No. 15-7658 (MAS) (LHG), 2017 U.S. Dist. LEXIS 66037, at *37-38 (D.N.J. Apr. 28, 2017) (finding attribution where statements used "we"); *Carter*, 2011 U.S. Dist. LEXIS 136599, at *8 ("the quotation attributed to defendant in the first press release is a strong indicator that defendant 'made' the statement regarding that false contract").[5]

Fourth, the TAC pleads facts showing the Moving Defendants' control (and scienter) in general over the Company, the misstatements, and the alleged fraud. *United States SEC v. Brown*, 878 F. Supp. 2d 109, 116 (D.D.C. 2012) ("Whether one is the 'maker' of a false statement turns on factual issues of scienter as well as 'ultimate control' over the statement. Such control may be evidenced by 'attribution within a statement' or 'surrounding circumstances,' including the signing of SEC filings."). For example, defendant Qi not only co-founded the Company and served as CEO, but also proposed to acquire the Company in a going private transaction. ¶ 104; ECF No.

---

[5] Moving Defendants' assertion that Qi's statement does not contain a misstatement is a red herring. DB at 9-10. First, a plain reading of the entire April 2018 Press Release and Qi's statement clearly shows the "issues identified" are also discussed by Qi, not some other random "accounting issues." *See also Jackson Cty. Emps. Ret. Sys. v. Ghosn*, No. 3:18-cv-01368, 2020 U.S. Dist. LEXIS 243724, at *52-53 (M.D. Tenn. Dec. 29, 2020) (rejecting argument that defendant's statements were not the portions alleged to be misleading, and finding that as only defendant was quoted and was CEO and Chairman of the company, said defendant had "total control"). Second, as Moving Defendants recognize, it is alleged that the April 2018 Press Release *omitted* the fact that PwC had also advised that "the issues identified raised questions related to its ability to rely upon the representations of management" (¶ 214), which would include Qi, and the fact that Qi stated that "we immediately took measures to address this situation", without acknowledging the material omission that his own representations to PwC were in question, adequately connects the paragraphs and allegations. *Contra*, *Loreley Fin.*, 797 F.3d at 176 (finding error where a "benign reading [of emails]" and "requiring Plaintiffs to show that their reading was superior" improperly imposed a "*de facto* probability requirement at the pleadings stage").

189-9.  Gridsum's IPO Registration Statement and the 2016 Form 20-F stated:

> Our success and future growth depend largely upon the continued services of our executive officers. The loss of one or more of our executive officers, particularly our chief executive officer and chairman, Guosheng Qi, or the failure of our executive team to work with our employees and lead our company effectively, could adversely affect our business.

¶ 228.  Additionally, those same SEC filings stated that Qi was "chief operating decision maker" and "reviews consolidated results when making decisions about allocating resources and assessing performance of" the Company.  ¶ 229.  Defendant Qi was also personally invested in Gridsum during the Class Period, having personally guaranteed short-terms loans as large as $40.9 million.  ¶¶ 242-45.

All three Moving Defendants also admitted to having knowledge of the Company's financial condition in other financial statements and were the spokespersons for the Company on earnings conference calls.  ¶ 230.  All the above, together with the size of the restatement (¶¶ 234-35) and the fact that the April 2018 Press Release omitted that PwC had "also advised that the issues identified raised questions related to its ***ability to rely upon the representations of management***" (¶ 214), in other words the representations of the Moving Defendants, support the finding that the Moving Defendants had "ultimate control" over the contents of the April 2018 Press Release and thus were the "makers" of the statements.

Fifth, Zhang signed the Form 6-K filed with the SEC attaching the April 2018 Press Release.  ¶ 99.  Signatories to SEC filings are unquestionably and routinely found to be the makers of such documents and statements therein, including those attaching press releases.[6]  *See, e.g.*, *In*

---

[6] Moving Defendants' reliance on *Janus* in claiming that Zhang prepared the Form 6-K "on behalf of another" and therefore is not the maker is inapposite. DB at 8 (quoting *Janus*, 564 U.S. at 142). *Janus* involved allegations that an investment advisor "made" statements in client prospectuses, not a corporate officer who is alleged to have signed a company's SEC filing and to have had control over it as here.  *Janus*, 564 U.S. at 142-43.  *See Pfizer*, 2012 U.S. Dist. LEXIS 39454, at *19-20 (rejecting a similar argument, stating "*Janus* did not[, however,] alter the well-established

8

*re Stillwater Capital Partners Inc.*, 858 F. Supp. 2d 277, 287-88 (S.D.N.Y. 2012); *Special Situations Fund III QP, L.P. v. Brar*, No. 14-cv-04717-SC, 2015 U.S. Dist. LEXIS 38825, at *8-9 (N.D. Cal. Mar. 26, 2015) (finding *Janus* inapposite because defendant was the "maker" of the statement because he signed it, stating: "Unfortunately for Defendants, courts have routinely rejected their argument. 'Courts have consistently held that the signer of a corporate filing is its 'maker,' because signing a filing implies 'ultimate control' over its contents.') (quoting *SEC v. e-Smart Techs., Inc.*, 31 F. Supp. 3d 69, 80 (D.D.C. 2014)); *Brown*, 878 F. Supp. 2d at 116 (distinguishing *Janus* and stating "[b]oth before and after the decision in *Janus*, courts have consistently held that the signer of a corporate filing is its 'maker.'"); *Carter*, 2011 U.S. Dist. LEXIS 136599, at *8 ("defendant in the instant case signed an SEC form (a form 8-K) as high-ranking corporate officer (CEO). The defendant's electronic signature indicates that he 'made' the statements therein."); *Merck*, 2011 U.S. Dist. LEXIS 87578, at *102 ("Scolnick was at the time of each attributed statement an officer of Merck. He signed SEC forms and was quoted in articles and reports in his capacity as Merck's Executive Vice President for Science and Technology and President of Merck Research Laboratories.").

The Moving Defendants' attempt to downplay the significance of controlling precedent from this District on the signature issue by referring to an out-of-circuit decision distinguishing *In re Banco Bradesco* fails. DB at 8-9. In *In re Banco Bradesco S.A. Securities Litigation*, Judge

---

rule that 'a corporation can act only through its employees and agents.' . . . Here, Plaintiffs do not seek to hold a corporate actor liable for statements over which another corporation had ultimate control."); *In re Merck & Co., Sec. Derivative & "ERISA" Litig.*, MDL No. 1658, 2011 U.S. Dist. LEXIS 87578, at *101-03 (D.N.J. Aug. 8, 2011) (similar); *Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, No. CV: 10-2847-IPJ, 2011 U.S. Dist. LEXIS 93873, at *3 (N.D. Ala. Aug. 23, 2011) ("[n]othing in *Janus* stands for the proposition that CEOs and CFOs can not be liable for false and misleading statements in their own company's financial statements").

9

Woods held that "[b]ecause the Form 6-K furnishing the March 31, 2015 press release to the SEC (and thereby U.S. investors) was signed by Angelotti" it is alleged that he was the "maker" of the statement.  277 F. Supp. 3d 600, 663 (S.D.N.Y. 2017).  A second Form 6-K was discussed by the court which attached a June 9, 2016 press release in which an earlier statement from May 31, 2016, was "ratified" and the court found that the June 9, 2016 ratification of the May 31, 2016 statement was enough for the statement to have been "made."  *Id.*  The court in *In re Cognizant Technology Solutions Corporation Securities Litigation*, C.A. No. 16-6509 (ES) (CLW), 2020 U.S. Dist. LEXIS 98830 (D.N.J. June 5, 2020), found that a chief legal officer who signed Form 8-Ks was not liable as a "maker" of the attached financial earnings press releases because the plaintiffs failed to allege how the chief legal officer had "ultimate control" over the alleged misstatements.  *Id.* at \*51.  As discussed more fully above, Plaintiffs here adequately allege facts showing that Zhang, the co-CFO of Gridsum, had "ultimate control" over the April 2018 Press Release discussing the Company's financial statements.

For all the reasons above, the TAC adequately pleads that the Moving Defendants had "ultimate control" over the April 2018 Press Release and are "makers" of the statements in accord with *Janus*.

### C. Even If the Moving Defendants Were Not "Makers" of the Statements With "Ultimate Control" Over the April 2018 Press Release, They Can be Held Liable As Corporate Officers Intimately Involved With Gridsum's Day to Day Activities

Even if any of the Moving Defendants did not have "ultimate control" over the April 2018 Press Release, which they did as discussed above, each of them are also liable pursuant to the group-pleading doctrine as high-level corporate officers intimately involved with Gridsum's day-to-day activities.  Contrary to Moving Defendants' claims otherwise (DB at 10-11), more than a "minority" of courts in this District and Circuit have held that the group-pleading doctrine survives

10

*Janus*.  In fact, "the majority of courts in the Second Circuit have held" that the group-pleading doctrine survives *Janus* where it is plead that the "corporate insiders" are "intimately involved with [] day to day activities."[7]  *FIH, LLC v. Found. Capital Partners, LLC*, 176 F. Supp. 3d 52, 71-72 (D. Conn. 2016); *see also Barrick Gold*, 2015 U.S. Dist. LEXIS 71136, at*7-8 ("Here, plaintiffs have pleaded that Potter, Kinver, and Gonzales, as high-level officers, were corporate insiders involved in the everyday business of the company, and that the statements were made in group-published documents, such as press releases and annual reports.  For pleading purposes, they have adequately alleged that these defendants were the "makers" of the statements."); *City of Pontiac*, 875 F. Supp. 2d at 374-75 ("[*Janus*] has no bearing on how corporate officers who work together in the same entity can be held jointly responsible on a theory of primary liability.  It is not inconsistent with *Janus Capital* to presume that multiple people in a single corporation have the joint authority to 'make' an SEC filing, such that a misstatement has more than one 'maker.'").[8]

Moving Defendants reliance on this Court's decision as to defendant Melcher is misplaced.  DB at 11-12.  Defendant Melcher was not a corporate officer involved in the day-to-day business of Gridsum like the Moving Defendants, but a director of the Company.  Thus, a decision based on Melcher's lower level of involvement and control cannot be applied to the Moving Defendants who, as detailed in Section III.B. above, are alleged to have been intimately involved with and

---

[7] Similarly, and contrary to Moving Defendants out-of-circuit support otherwise (DB at 10 n. 5), "most of the judges in this District who have addressed the effect of the PSLRA on the group pleading doctrine" have rejected Moving Defendants' argument that the PSLRA eliminated group pleading, finding "that the doctrine is alive and well."  *City of Pontiac Gen. Emps. Ret. Sys. v. Lockhead Martin Corp.*, 875 F. Supp. 2d 359, 374-75 (S.D.N.Y. 2012) (collecting cases).

[8] *See also CannaVest*, 307 F. Supp. 3d at 240-41 ("there is a presumption that those with 'direct involvement in the everyday business of [CannaVest]' made the statements at issue"); *Levy*, 48 F. Supp. 3d at 449; *In re Satyam Computer Servs. Sec. Litig.*, 915 F. Supp. 2d 450, 477 (S.D.N.Y. 2013); *In re Nevsun Res. Ltd.*, No. 12 Civ. 1845 (PGG), 2013 U.S. Dist. LEXIS 162048, at *36-37 n.5 (S.D.N.Y. Sept. 27, 2013) (finding that under the group-pleading doctrine senior executives "made" the statements in press releases).

have knowledge of Gridsum's day to day affairs and the alleged fraud. *See, e.g.*, *CannaVest*, 307 F. Supp. 3d at 241-43 (noting that group-pleading doctrine "is most commonly applied to 'high-ranking officers' in a corporation" and finding, *inter alia*, that a defendant responsible for "accounting functions" had "direct involvement in the management" of the company).

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion should be denied.

Dated: June 17, 2021　　　　　　　　　　Respectfully submitted,

**BRAGAR EAGEL & SQUIRE, P.C.**

/s/ *Lawrence P. Eagel*
Lawrence P. Eagel
Melissa A. Fortunato
Marion C. Passmore
810 Seventh Avenue, Suite 620
New York, New York 10019
Telephone: (212) 308-5858
Facsimile: (212) 214-0506
Email: eagel@bespc.com
　　　　fortunato@bespc.com
　　　　passmore@bespc.com

*Attorneys for Lead Plaintiff William Barth and Lead Counsel for the Class*

**GAINEY McKENNA & EGLESTON**
Gregory M. Egleston
Thomas J. McKenna
501 Fifth Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 983-1300
Facsimile: (212) 983-0383
Email: gegleston@gme-law.com
　　　　tjmckenna@gme-law.com

*Attorneys for Named Plaintiff Xuechen Li*