**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PEIFA XU, Individually and On Behalf of All Others Similarly Situated, | Civil Action No. 1:18-cv-03655 (GHW) |
| Plaintiff, | |
| v. | JUDGE GREGORY H. WOODS |
| GRIDSUM HOLDING INC., GUOSHENG QI, RAVI SARATHY, MICHAEL PENG ZHANG, and THOMAS ADAM MELCHER, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**

**TABLE OF CONTENTS**

I.  PRELIMINARY STATEMENT ....................................................................................................1

II. ARGUMENT ..........................................................................................................................4

    A.  The Settlement Class Should Be Finally Certified ...............................................................4

    B.  The Settlement Is Fair, Reasonable, and Adequate and Warrants Final Approval...........5

        1.  The Law Favors and Encourages Class Action Settlements .......................................5

        2.  Standards Governing Final Approval............................................................................5

        3.  The Proposed Settlement Is Procedurally Fair............................................................7

        4.  The Proposed Settlement Is Substantively Fair, Adequate, and Reasonable ...........10

            a)  The Complexity, Expense, and Likely Duration of Litigation Support Final
               Approval .............................................................................................................10

            b)  The Positive Reaction of the Settlement Class to the Settlement Supports
               Final Approval ....................................................................................................12

            c)  The Stage of the Proceedings and Discovery Completed...................................13

            d)  The Risks of Establishing Liability, Damages, and of Maintaining the
               Class Action Through Trial (Grinnell Factors Four, Five, and Six) Support
               Final Approval of the Settlement ......................................................................14

            e)  Defendants' Ability to Withstand a Greater Judgment......................................16

             f)  The Settlement Falls Well Within the Range of Reasonableness in Light of
                the Best Possible Recovery and Attendant Risks of Litigation..........................17

        5.  The Remaining Rule 23(e)(2) Factors Support Final Approval................................19

            a)  The Proposed Method for Distributing Relief Is Effective................................19

            b)  The Requested Attorneys' Fees Are Reasonable...............................................20

            c)  The Settlement Treats Settlement Class Members Equitably Relative to
               Each Other ..........................................................................................................21

    C.  The Plan of Allocation Is Fair and Reasonable............................................................21

    D.  Notice to the Settlement Class Satisfied the Requirements of Rule 23, the PSLRA,
        and Due Process..........................................................................................................23

III. CONCLUSION.......................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*In re 3D Sys. Sec. Litig.*,
No. 21-CV-1920 (NGG) (TAM), 2023 U.S. Dist. LEXIS 231792 (E.D.N.Y. Jan.
4, 2024) ...................................................................................................................4, 14, 15, 20

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) ................................................................................. *passim*

*Affiliated Ute Citizens of Utah v. United States*,
406 U.S. 128 (1972).................................................................................................................16

*In re Agent Orange Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987)...............................17

*In re Bear Stearns Cos.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012) ...................................................................12, 17, 21

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)................................................................................................................20

*Christine Asia Co. v. Jack Yun Ma*,
No. 1:15-md-02631 (CM) (SDA), 2019 U.S. Dist. LEXIS 179836 (S.D.N.Y.
Oct. 16, 2019) ........................................................................................................... *passim*

*City of Detroit v. Grinnell Corporation*,
495 F.2d 448 (2d Cir. 1974) ..................................................................................... *passim*

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ..............................................................................................5, 8, 16

*In re Facebook, Inc.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018) ....................................................................... *passim*

*In re Fibrogen, Inc.*,
No. 3:21-cv-02623-EMC, 2024 U.S. Dist. LEXIS 25384 (N.D. Cal. Feb. 13,
2024) .........................................................................................................................................7

*Fishoff v. Coty Inc.*,
No. 09 Civ. 628 (SAS), 2010 U.S. Dist. LEXIS 6242 (S.D.N.Y. Jan. 25, 2010)...................15

*In re Flag Telecom Holdings*,
No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702 (S.D.N.Y. Nov.
8, 2010) ...................................................................................................................................14

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) ..........................................................................................10

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015)...................................................................................................12

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004)................................................................................. *passim*

*Goldberger v. Integrated Res. Inc.*,
  209 F.3d 43 (2d Cir. 2000) ...................................................................................2, 20

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019) ...............................................................14

*Guevoura Fund Ltd. v. Sillerman*,
  No. 1:15-cv-07192-CM, 2019 U.S. Dist. LEXIS 218116 (S.D.N.Y. Dec. 18,
  2019) ....................................................................................................................23

*Hefler v. Wells Fargo & Co.*,
  No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 150292 (N.D. Cal. Sept. 4, 2018) ................19

*Hicks v. Morgan Stanley & Co.*,
  No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 24,
  2005) ....................................................................................................................12

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) ...........................................................16, 17, 21

*In re Initial Pub. Offering Sec. Litig.*,
  671 F. Supp. 2d 467 (S.D.N.Y. 2009) .................................................................11

*Joel A. v. Guiliani*,
  218 F.3d 132 8 (2d Cir. 2000) .................................................................................5

*Lea v. Tal Educ. Grp.*,
  No. 18-CV-5480 (KHP), 2021 U.S. Dist. LEXIS 229314 (S.D.N.Y. Nov. 30,
  2021). ............................................................................................................ *passim*

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) .......................................................12, 13, 20

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  No. 04 Civ. 8144 (CM), 2009 U.S. Dist. LEXIS 120953 (S.D.N.Y. Dec. 23,
  2009) ....................................................................................................................16

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
  246 F.R.D. 156 (S.D.N.Y. 2007) .........................................................................23

*In re Metlife Demutualization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. 2010) ...........................................................15, 16

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972) ................................................................................17

*Nichols v. Noom, Inc.*,
  No. 20-CV-3677 (KHP), 2022 U.S. Dist. LEXIS 123146 (S.D.N.Y. July 12,
  2022) ................................................................................................................5, 10

*Noto v. 22nd Century Grp., Inc.*,
  C.A. No. 19-cv-01285-JLS-MJR, 2023 U.S. Dist. LEXIS 187531 (W.D.N.Y.
  Oct. 16, 2023) ....................................................................................5, 9, 20, 25

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) ......................................................................7, 12

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    991 F. Supp. 2d 437 (E.D.N.Y. 2014) ................................................................20

*Pearlstein v. Blackberry Ltd.*,
    No. 13 Civ. 7060 (CM) (KHP), 2022 U.S. Dist. LEXIS 177786 (S.D.N.Y. Sept.
    29, 2022) ....................................................................................................11, 13

*In re PPDAI Grp. Inc. Sec. Litig.*,
    No. 18-CV-6716 (TAM), 2022 U.S. Dist. LEXIS 11427 (E.D.N.Y. Jan. 21,
    2022) .................................................................................................4, 13, 17

*Rodriguez v. CPI Aerostructures, Inc.*,
    No. 20 CV 982 (ENV) (CLP), 2023 U.S. Dist. LEXIS 26891 (E.D.N.Y. Feb.
    16, 2023) ................................................................................................ passim

*In re Signet Jewelers Ltd. Sec. Litig.*,
    C.A. No. 1:16-cv-06728-CM-SDA, 2020 U.S. Dist. LEXIS 128998 (S.D.N.Y.
    July 21, 2020) ....................................................................................8, 10, 22

*Strougo v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003) .................................................................12

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ...........................................................11, 15

*Vaccaro v. New Source Energy Partners L.P.*,
    No. 15 CV 8954 (KMW), 2017 U.S. Dist. LEXIS 205785 (S.D.N.Y. Dec. 14,
    2017) .......................................................................................................13, 18

*In re Veeco Instr. Sec. Litig.*,
    No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85629 (S.D.N.Y. Nov. 7,
    2007) .............................................................................................................23

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ...................................................................................5

**Other Authorities**

Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action
    Litigation: 2023 Full-Year Review* (NERA Jan. 23, 2024) ....................................18

**Rules**

Fed. R. Civ. P. 23(c)(2)(B) .........................................................................*Passim*

**Codes**

15 U.S.C. § 78u-4(a)(7) ....................................................................................19

Pursuant to Federal Rule of Civil Procedure ("Rule") 23(e), Lead Plaintiff William Barth and additional Plaintiff Xuechun Li (together, "Plaintiffs"), on behalf of themselves and the Settlement Class, respectfully submit this memorandum of law in support of their motion for: (i) final approval of the proposed $4,500,000 Settlement (the "Settlement Amount") in the above-captioned action (the "Action") on the terms set forth in the Stipulation; (ii) approval of the proposed Plan of Allocation for distribution of the Net Settlement Fund; and (iii) final certification of the Settlement Class.[1]

## I.    PRELIMINARY STATEMENT

Plaintiffs' claims in this case are based upon Gridsum Holding Inc.'s ("Gridsum" or the "Company") restatement of its 2015 and 2016 financial statements and an April 2018 press release that Plaintiffs allege was false and misleading.  The operative complaint asserts claims under Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"), and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder against defendants Gridsum, Guosheng Qi ("Qi") (Gridsum's founder, Chief Executive Officer and Chairman), Michael Peng Zhang (Co-Chief Financial Officer), Ravi Sarathy (Co-Chief Financial Officer), Thomas Adam Melcher (Director and Audit Committee member) (collectively, "Defendants") and certain Dismissed Defendants (Gridsum's auditor, underwriters for the Company's initial public offering, and other Company directors) on behalf of a class of all persons and entities who purchased or

---

[1]  Unless otherwise stated, capitalized terms used herein have the same meanings set forth and defined in the Stipulation and Agreement of Settlement dated December 1, 2023 (ECF No. 289-1, the "Stipulation" or "Stip.") and the Declaration of Lawrence P. Eagel in Support of: (1) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation, and (2) Lead Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Awards to Plaintiffs (the "Eagel Declaration"), submitted herewith.  All citations to "¶ ___ " and "Ex. ___ " in this memorandum refer, respectively, to paragraphs in, and exhibits to, the Eagel Declaration.

otherwise acquired Gridsum American Depository Shares ("ADSs") listed on the Nasdaq under the symbol "GSUM" between September 22, 2016 and January 7, 2019, inclusive.[2]

The proposed Settlement provides for a cash payment of $4,500,000 for the Settlement Class, resolving all claims that were brought or could have been brought in the Action against Gridsum, the Defendants, and those defendants dismissed by earlier orders of the Court. The Settlement results from six years of vigorous litigation and following arm's-length negotiations before experienced mediator Michelle Yoshida, Esq. of Phillips ADR Enterprises, P.C. (the "Mediator"). On December 15, 2023, the Court entered an order preliminarily approving the Settlement as fair, reasonable, and adequate, preliminarily certifying the Settlement Class, directing notice of the Settlement to potential Settlement Class Members, and scheduling the Settlement Hearing (the "Preliminary Approval Order"). ECF No. 293.

The Settlement represents an excellent result for the Class under the circumstances and readily satisfies the factors set forth in Rule 23(e)(2) and *City of Detroit v. Grinnell Corporation*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). As detailed in the Eagel Declaration, Plaintiffs and Plaintiffs' Counsel had a well-developed understanding of the strengths and weaknesses of the case, enabling them to appropriately evaluate the Settlement's fairness, reasonableness, and adequacy, including partially defeating two motions to dismiss. The Settlement is a fair and reasonable compromise given the significant risks and expenses of continued litigation, particularly the challenges associated with litigation against foreign defendants, the complex nature of securities actions, the risks in obtaining class certification, and the risks of failing to survive the likely summary judgment motions. While

---

[2] The full definition of the Settlement Class is as defined in the Eagel Declaration, which also includes, *inter alia*, a detailed factual background and procedural history and is an integral part of this submission.

Plaintiffs and Plaintiffs' Counsel believe that the claims have merit, there is no guarantee of success. Weighed against such risks, the Settlement of $4.5 million, which provides a recovery of 20.6% of the estimated damages and recovery on certain claims dismissed by the Court, is an outstanding and immediate result for the Settlement Class.

The reaction of the Settlement Class further confirms the fairness, reasonableness, and adequacy of the Settlement. Pursuant to the Preliminary Approval Order, 6,399 Postcard Notices were sent to potential Settlement Class Members and nominees, and notice was published over a national newswire service. *See* Ex. 1 (Declaration of Tina Chiango Regarding Dissemination of Notice to the Settlement Class) at ¶¶ 4-8. Specifically, to date, no objections have been received from any Settlement Class Member and no requests for exclusion have been received. *Id.* at ¶¶ 10-11. Accordingly, Plaintiffs respectfully request that the Court certify the Settlement Class for purposes of settlement only pursuant to Rules 23(a) and 23(b)(3) and grant final approval of the Settlement.

Plaintiffs also request that the Court approve the proposed Plan of Allocation that will be used to distribute the Net Settlement Fund to Settlement Class Members. The Plan of Allocation, which was developed in consultation with Plaintiffs' damages experts, fairly distributes the Net Settlement Fund in accordance with the claims in this litigation (dismissed or sustained) and the type of Gridsum securities purchased or acquired (common stock or options/puts) during the Settlement Class Period. It is substantively similar to plans that have been approved and used to allocate recoveries in other securities class actions. Accordingly, the Plan of Allocation is fair, reasonable, and adequate and warrants final approval.

## II.    ARGUMENT

### A.    The Settlement Class Should Be Finally Certified

Pursuant to Rule 23, "[b]efore approving a class settlement agreement, a district court must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied." *Rodriguez v. CPI Aerostructures, Inc.*, No. 20 CV 982 (ENV) (CLP), 2023 U.S. Dist. LEXIS 26891, at *12 (E.D.N.Y. Feb. 16, 2023) (quoting *Berni v. Barilla S.p.A.*, 964 F.3d 141, 146 (2d Cir. 2000)).[3]  To maintain a class action, the four requirements of Rule 23(a) must be satisfied, and "certification must be appropriate under Rule 23(b)." *In re PPDAI Grp. Inc. Sec. Litig.*, No. 18-CV-6716 (TAM), 2022 U.S. Dist. LEXIS 11427, at *14-18 (E.D.N.Y. Jan. 21, 2022).  Rule 23(a)'s requirements include numerosity, commonality, typicality, and adequacy.  Rule 23(b)(3) allows for class certification where (i) questions of law or fact common to class members predominate over any questions affecting only individual members, and (ii) a class action is superior to other available methods for adjudicating the controversy.  In the Preliminary Approval Order, the Court preliminarily found that "the prerequisites of class action certification under Federal Rules of Civil Procedure 23(a) and 23(b)(3) have been satisfied for the Settlement Class." *See* ECF No. 293 at 2.  No events have occurred to alter the propriety of the Court's preliminary certification of the Settlement Class, and no objections to certification have been received.  ¶ 73; Ex. 1 at ¶ 11.  *In re 3D Sys. Sec. Litig.*, No. 21-CV-1920 (NGG) (TAM), 2023 U.S. Dist. LEXIS 231792, at *17 (E.D.N.Y. Jan. 4, 2024) ("[G]iven that nothing has transpired since preliminary approval was granted that would alter the Court's [prior] findings, the Court reiterates its previous finding that Plaintiffs have satisfied Rule 23(a)'s [and Rule 23(b)(3)'s] requirements.").  For the reasons stated in Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action

---

[3]  Unless otherwise noted, all emphasis is added, and all internal quotations and citations are omitted.

Settlement and supporting Memorandum (ECF Nos. 287-88), incorporated herein by reference, and the Court's Preliminary Approval Order, Plaintiffs respectfully request that the Court grant final certification of the Settlement Class under Rules 23(a) and (b)(3), including the appointment of Plaintiffs as Class Representatives and Lead Counsel as Class Counsel for the Settlement Class.

### B. The Settlement Is Fair, Reasonable, and Adequate and Warrants Final Approval

#### 1. The Law Favors and Encourages Class Action Settlements

Public policy strongly favors the settlement of disputes, particularly in class actions. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005). Complex class actions such as this one readily lend themselves to settlement due to the difficulties in proof, length of litigation, and uncertainties of the outcome. *Nichols v. Noom, Inc.*, No. 20-CV-3677 (KHP), 2022 U.S. Dist. LEXIS 123146, at *9 (S.D.N.Y. July 12, 2022); *see also In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation.").

#### 2. Standards Governing Final Approval

"In determining whether to approve a class settlement under Rule 23(e), the Court must determine that the proposed settlement is fair, adequate, and reasonable, and not a product of collusion." *Noto v. 22nd Century Grp., Inc.*, C.A. No. 19-cv-01285-JLS-MJR, 2023 U.S. Dist. LEXIS 187531, at *17 (W.D.N.Y. Oct. 16, 2023) (quoting *Joel A. v. Guiliani*, 218 F.3d 132, 138 (2d Cir. 2000)). This entails examining both procedural and substantive fairness. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("The District Court determines a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms.").

In assessing a settlement's fairness and adequacy, courts in the Second Circuit are guided by the factors enumerated in Rule 23(e)(2).  These factors include:

(A)    whether the class representatives and class counsel have adequately represented the class;

(B)    whether the proposal was negotiated at arm's length;

(C)    whether the relief provided for the class is adequate, taking into account:

   i.    the costs, risks, and delay of trial and appeal;

   ii.    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

   iii.    the terms of any proposed award of attorneys' fees, including timing of payment; and

   iv.    any agreement required to be identified under Rule 23(e)(3); and

(D)    whether the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  The first two factors consider the "negotiations leading up to the proposed settlement," *i.e.*, procedural fairness, and the last two factors focus on the settlement's substantive fairness.  *Rodriguez*, 2023 U.S. Dist. LEXIS 26891, at *22-23.

In evaluating the substantive fairness of a settlement, courts in the Second Circuit also consider the nine *Grinnell* factors:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463.  "[N]ot every factor must weigh in favor of settlement, rather the court should consider the totality of these factors in light of the particular circumstances."  *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004).

As set forth below, each of the *Grinnell* and Rule 23(e) factors are satisfied here.  The proposed Settlement therefore warrants final approval because it is fair, reasonable, and adequate.

6

### 3.    The Proposed Settlement Is Procedurally Fair

"With respect to procedural fairness . . . a District Court reviewing a proposed settlement must" examine the "negotiating process, to ensure that the settlement resulted from arm's-length negotiations" between counsel with the necessary experience, and knowledge about the case to determine whether the settlement is in the best interests of the class. *Lea v. Tal Educ. Grp.*, No. 18-CV-5480 (KHP), 2021 U.S. Dist. LEXIS 229314, at *22-23 (S.D.N.Y. Nov. 30, 2021). *See also* Rule 23(e)(2)(A) (requiring adequate representation) and Rule 23(e)(2)(B) (requiring arm's-length negotiations). Indeed, "[s]o long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement, and great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997); *In re Facebook, Inc.*, 343 F. Supp. 3d 394, 408 (S.D.N.Y. 2018) (similar).

The presumption of fairness applies here because the Settlement was achieved after thorough arm's-length negotiations between well-informed and experienced counsel. ¶¶ 36, 78-80, 83. The Settlement negotiations included a full-day mediation with Michelle Yoshida, Esq., a highly experienced mediator in the area of securities class actions, on September 21, 2023. ¶¶ 36, 39; Ex. 2 at ¶¶ 4-5 (Declaration of Michelle Yoshida in Support of Final Approval of the Class Action Settlement); *In re Fibrogen, Inc.*, No. 3:21-cv-02623-EMC, 2024 U.S. Dist. LEXIS 25384, at *8 (N.D. Cal. Feb. 13, 2024) ("Ms. Yoshida is regularly recognized as an experienced mediator."). Prior to the mediation, the Parties prepared and submitted detailed mediation statements presenting the strengths and weaknesses of their positions, and they participated in separate pre-mediation calls with the Mediator. ¶¶ 37-38; Ex. 2 at ¶ 7.

Negotiations continued via Zoom, telephone, and e-mail with the assistance of the Mediator for several weeks following the September 21, 2023 in-person session, leading to all

Parties accepting a Mediator's proposal.  ¶ 40; Ex. 2 at ¶¶ 11-12.  After informing the Court that an agreement had been reached on October 17, 2023, the Parties worked extensively on negotiating the final Settlement terms.  ¶ 42.  The thorough and arm's-length nature of the negotiations and the involvement of an experienced mediator support the conclusion that the Settlement is fair, adequate, and reasonable.  *See, e.g.*, *D'Amato*, 236 F.3d at 85 (holding that a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *Rodriguez*, 2023 U.S. Dist. LEXIS 26891, at *27 (finding a settlement fair and adequate where neutral and experienced mediator was involved, with one mediation session and acceptance of mediator's proposal); *Christine Asia Co. v. Jack Yun Ma*, No. 1:15-md-02631 (CM) (SDA), 2019 U.S. Dist. LEXIS 179836, at *38 (S.D.N.Y. Oct. 16, 2019) (finding that "the participation of a neutral and respected mediator is an indicator of a settlement's procedural fairness").

In addition, Plaintiffs' Counsel are experienced in prosecuting class actions and have successfully prosecuted numerous securities class actions, as well as similar actions, throughout the country.  ¶ 80; Exs. 3 and 4 (firm résumés, attached as Exs. C thereto).  Defendants were also represented by highly experienced counsel with Cooley LLP.  ¶ 83. S*ee also Lea*, 2021 U.S. Dist. LEXIS 229314, at *23 (explaining that the fact that "counsel for both sides are experienced in class action litigation" supports fairness presumption); *In re Signet Jewelers Ltd. Sec. Litig.*, C.A. No. 1:16-cv-06728-CM-SDA, 2020 U.S. Dist. LEXIS 128998, at *8 (S.D.N.Y. July 21, 2020).

Moreover, as detailed in the Eagel Declaration (¶¶ 19-35, 60, 78-79), prior to the in-person settlement negotiations and over the course of six years of hard fought litigation, Plaintiffs' Counsel had, among other things: (i) reviewed and analyzed, *inter alia*, Gridsum's filings with the SEC, press releases, conference call transcripts, analyst reports, and other news articles concerning

Gridsum and its industry; (ii) drafted three detailed complaints; (iii) analyzed and addressed the multiple motions to dismiss arguments from multiple defendants; (iv) analyzed and addressed service issues relating to service on defendants in China and Hong Kong, including drafting a motion for alternative service; (v) drafted a motion for class certification and reply; (vi) analyzed and addressed Defendants' arguments in opposition to class certification; (vii) reviewed and analyzed Defendants' responses to document requests and interrogatories; (viii) negotiated search terms to be used in collecting Defendants' documents; (ix) reviewed and analyzed Defendants' initial production of documents; (x) defended and taken class representative and expert depositions; (xi) consulted with experts on accounting, market efficiency, loss causation, and damages issues; and (xii) drafted and exchanged a detailed mediation statement setting forth the facts and strengths of the Action and potential damages.. Thus, Plaintiffs' Counsel was sufficiently informed of the Action's strengths and weaknesses and well-positioned to evaluate the appropriateness of any proposed settlement and its terms. *See, e.g.*, *Rodriguez*, 2023 U.S. Dist. LEXIS 26891, at *26-27 (explaining that where counsel conducted factual investigation, consulted experts, drafted complaint and briefed motion to dismiss, counsel was found to be well-informed, and the settlement was procedurally fair); *Noto*, 2023 U.S. Dist. LEXIS 187531, at *22 (same); *Advanced Battery*, 298 F.R.D. at 177 (noting that the focus should be on plaintiffs' ability to evaluate the case and settlement and finding that the plaintiffs were able to do so although "no merits discovery occurred").

Plaintiffs also adequately represented the Class throughout the litigation and resolution of the Action. There are no conflicts of interest between Plaintiffs and other Settlement Class Members—all purchased Gridsum securities based on the same alleged misstatements and omissions and suffered the same type of alleged damages. Thus, they share a common goal of

maximizing recovery.  *Nichols*, 2022 U.S. Dist. LEXIS 123146, at *23-24 (finding that plaintiffs were "adequate representatives because their interests are aligned with other class members' interests because they suffered the same injuries—monetary losses resulting from Noom's autorenewal feature"); *Signet*, 2020 U.S. Dist. LEXIS 128998, at *6 (explaining that plaintiffs have "no interests antagonistic to those of other Class Members" because "[l]ike other Class Members, [plaintiffs have] an interest in obtaining the largest possible recovery.").  Plaintiffs contributed significant time to overseeing the Action, regularly communicating with Plaintiffs' Counsel and reviewing pleadings and motions, and with Lead Plaintiff William Barth responding to discovery requests and sitting for a deposition.  *See* Exs. 5 and 6 at ¶ 6 and ¶ 8, respectively (Declaration of William Barth, Declaration of Xuechun Li).  Plaintiffs also evaluated, approved, and endorse the Settlement.  *Id.* at ¶¶ 6-7 and ¶¶ 8-9, respectively.

> ### 4.    The Proposed Settlement Is Substantively Fair, Adequate, and Reasonable
>
> #### a)    The Complexity, Expense, and Likely Duration of Litigation Support Final Approval

In assessing a settlement's fairness, courts must consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal."  Fed. R. Civ. P. 23(e)(2)(C); *see also Grinnell*, 495 F.2d at 463 (Factor 1).  "[S]ecurities class actions are recognized by courts as notably difficult and notoriously uncertain to litigate."  *In re Facebook, Inc.*, 343 F. Supp. at 409; *see also In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011) (similar).  "Accordingly, [c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation."  *Signet*, 2020 U.S. Dist. LEXIS 128998, at *11.

This case was no exception—the claims are complex, and it is certain that continued litigation would have been costly and protracted.  Complex issues related to scienter, loss

causation, and damages, among other things, are prevalent in this case. If not for the Settlement, Plaintiffs' first hurdle would be overcoming the outstanding motion for class certification, which is a "battle of experts" in which there is no guarantee of Plaintiffs' success. *See, e.g.*, *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579-80 (S.D.N.Y. 2008) (stating that in a "battle of experts, it is virtually impossible to predict with any certainty which testimony would be credited"). Overcoming the class certification motion would not end Plaintiffs' challenges. Plaintiffs would then face, *inter alia*, lengthy and costly fact and expert discovery, summary judgment motion briefing, and trial, with substantial risk at each stage as discussed below. *See In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 481 (S.D.N.Y. 2009) (finding that complexity, expense, and duration of litigation supports final approval where "motions would be filed raising every possible kind of pre-trial, trial and post-trial issue conceivable"). The fact that Gridsum is headquartered in China would add to the cost and delay caused by, for example, the need for translations and depositions outside of the United States. ¶ 67. *See, e.g.*, *Lea*, 2021 U.S. Dist. LEXIS 229314, at *25 (noting as substantial cost and delay factors that "most of the discovery, documentary evidence, and depositions would need Chinese translation" and depositions in China and Hong Kong "would be extremely difficult and costly"); *Christine Asia*, 2019 U.S. Dist. LEXIS 179836, at *41 (similar). Indeed, litigating this Action to the present has already taken six years.

"Even if Plaintiffs prevailed at trial, [d]elay, not just at the trial stage but through post-trial motions and the appellate process, would cause Class Members to wait years for any recovery, further reducing its value." *Pearlstein v. Blackberry Ltd.*, No. 13 Civ. 7060 (CM) (KHP), 2022 U.S. Dist. LEXIS 177786, at *9 (S.D.N.Y. Sept. 29, 2022). In sum, success is not guaranteed. *Id.* at *9-10 (noting how "intervening shifts in legal standards have undermined trial victories"); *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding

jury verdict of $2.46 billion after 13 years of litigation).  The Settlement provides an immediate favorable result as opposed to the risk of a smaller recovery, or no recovery at all, after years of delay and mounting expense.  *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *16 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs; justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action."); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery.").

Accordingly, the complexity, expense, and delay of litigating the Action favors final approval of the Settlement.

### b)    The Positive Reaction of the Settlement Class to the Settlement Supports Final Approval

The reaction of a class to a settlement "is perhaps the most significant factor to be weighed in considering its adequacy."  *In re Bear Stearns Cos.*, 909 F. Supp. 2d 259, 266 (S.D.N.Y. 2012); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) (same).  The "absence of objectants may itself be taken as evidencing the fairness of a settlement."  *Painewebber*, 171 F.R.D. at 126.

In accordance with the Preliminary Approval Order, as of February 29, 2024, RG/2 Claims Administration LLC ("RG/2"), the Court-appointed Claims Administrator, has mailed 6,399 Postcard Notices to prospective Settlement Class Members and nominees, and issued the Summary Notice.  Ex. 1 at ¶¶ 4-8.  RG/2 also maintains a webpage for the Settlement, providing basic

information about the Action, the Settlement and its deadlines, and downloadable copies of the long-form Notice and Claim Form. *Id.* at ¶ 9.

Although the opt-out/exclusion and objections deadline has not yet passed,[4] to date, no objections have been received, and no Settlement Class Member has requested an exclusion. ¶¶ 6, 8, 56, 87; Ex. 1 at ¶¶ 10-11. This positive reaction suggests that the Settlement Class supports the Settlement and weighs in favor of final approval. *Pearlstein*, 2022 U.S. Dist. LEXIS 177786, at *11-12 (approving settlement where three objections); *Lea*, 2021 U.S. Dist. LEXIS 229314, at *7-8 (approving settlement where no objections and three exclusion requests); *Facebook*, 343 F. Supp. 3d at 410 ("That not one sophisticated institutional investor objected to the Proposed Settlement is indica of its fairness").

### c)    The Stage of the Proceedings and Discovery Completed

The inquiry under the third *Grinnell* factor is whether the plaintiff has a sufficient understanding of the strengths and weaknesses of the case to enter into a settlement. *Maley*, 186 F. Supp. 2d at 364. "Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims." *Glob. Crossing*, 225 F.R.D. at 458; *PPDAI Grp.*, 2022 U.S. Dist. LEXIS 11427, at *25 ("Although the parties here have not engaged in formal discovery, the record demonstrates that Plaintiffs' counsel have thoroughly investigated the strengths and weaknesses of the claims and conducted extensive legal research in responding to the motions to dismiss in the federal and state court actions."); *Vaccaro v. New Source Energy Partners L.P.*, No. 15 CV 8954 (KMW), 2017 U.S. Dist. LEXIS 205785, at *15 (S.D.N.Y. Dec. 14, 2017) (similar).

---

[4]  The deadline to request exclusion from the Settlement Class, or to object to any aspect of the Settlement, is March 4, 2024. Any exclusions or objections received after this filing will be addressed in Plaintiffs' reply, due on or before March 27, 2024.

At the time of settlement, Plaintiffs' Counsel had conducted a thorough investigation, including drafting three detailed complaints, opposing multiple motions to dismiss, briefing the motion for class certification, engaging in discovery (including reviewing an initial document production, expert depositions, and defending Lead Plaintiff's deposition), and participating in a hard-fought mediation process.  *See* Section II.B.3 *supra*; ¶¶ 19-35, 60, 78-79.  Thus, the Settlement was reached with a full understanding of the legal and factual issues.  *3D Sys.*, 2023 U.S. Dist. LEXIS 231792, at *27.

### d) The Risks of Establishing Liability, Damages, and of Maintaining the Class Action Through Trial (Grinnell Factors Four, Five, and Six) Support Final Approval of the Settlement

Securities class actions are complex and with substantial risk at every stage of the litigation. *Christine Asia*, 2019 U.S. Dist. LEXIS 179836, at *44; *see also* Section III.B.4.(a) *supra* (complexity and cost).  While Plaintiffs and Plaintiffs' Counsel firmly believe their claims are meritorious and that they could successfully establish the required Section 10(b) elements, there is no guarantee that Plaintiffs would prevail on liability, loss causation, damages, and class certification issues through trial.  In assessing these factors, "a court should balance the benefits afforded the Class, including immediacy and certainty of recovery, against the continuing risks of litigation." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 694 (S.D.N.Y. 2019); *see also Glob. Crossing*, 225 F.R.D. at 459 (explaining that "the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement").

"Courts routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear."  *In re Flag Telecom Holdings*, No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702, at *48 (S.D.N.Y. Nov. 8, 2010); *see also Advanced Battery*, 298 F.R.D. at 177 ("Securities class actions present hurdles to proving liability that are particularly difficult for plaintiffs to meet.").  Defendants would have vigorously challenged Plaintiffs on

complex issues relating to falsity and scienter, at a minimum.  ¶¶ 61-67.  Plaintiffs' partial success in overcoming Defendants' motions to dismiss highlights some of the issues Plaintiffs would face. *See* ECF Nos. 201, 236.  For example, the Court found that the alleged misstatements in Gridsum's Offering Documents relating to the 2015 financials were not material.  ECF Nos. 201 and 236. Defendants continue to deny all of Plaintiffs' allegations and would likely put forth strong arguments as to falsity, including that the 2016 financial restatement was immaterial, only resulting from a change in revenue recognition methodology for revenues in a new business line.

Defendants would likely argue as well that Plaintiffs cannot demonstrate scienter, as they did in their motion to dismiss.  Scienter is often considered "the most difficult and controversial aspect of a securities fraud claim."  *Fishoff v. Coty Inc.*, No. 09 Civ. 628 (SAS), 2010 U.S. Dist. LEXIS 6242, at *5 (S.D.N.Y. Jan. 25, 2010); *see also Telik*, 576 F. Supp. 2d at 579 ("Proving a defendant's state of mind is hard in any circumstances.").  Defendants would likely argue at trial, *inter alia*, that Defendants had no motive or opportunity to commit fraud, pointing out that there were no sales of stock by the individual defendant.

Prevalent risks also exist in proving loss causation and damages.  *3D Sys.*, 2023 U.S. Dist. LEXIS 231792, at *29 (explaining that loss causation is a "complicated concept, both factually and legally"); *Glob. Crossing*, 225 F.R.D. at 459 (noting that the "[c]alculation of damages is a complicated and uncertain process").  First, Defendants would likely argue that Plaintiffs cannot prove loss causation, including, for example, that the stock price declined for reasons unrelated to the alleged corrective disclosures.  Second, disputes as to loss causation and damages often include a battle of the experts, increasing the risk that Plaintiffs would be unsuccessful at trial.  *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 338-39 (E.D.N.Y. 2010) ("In such a 'battle of experts,' the jury could well have been swayed by defendants' experts, finding that the plaintiffs

were entitled to little to no recovery even if liability were established."); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 193 (S.D.N.Y. 2012) (stating that "it is well established that damages calculations in securities class actions often descend into a battle of experts").

As for class certification, the Parties' briefing on the issue provides ample evidence as to the risks of maintaining a class action through trial.  ECF Nos. 262-64, 273-74, 280-81.  Plaintiffs would first have to prevail on the outstanding motion, overcoming Defendants' arguments, among others, that Gridsum's securities did not trade in an efficient market and that because primarily affirmative misrepresentations were alleged, Plaintiffs could not rely on *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972).  ¶ 62; ECF No. 273.  Thus, the "uncertainty surrounding class certification supports approval of the Settlement."  *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 U.S. Dist. LEXIS 120953, at *22-23 (S.D.N.Y. Dec. 23, 2009).  Further, even if Plaintiffs prevailed on the class certification motion, "there could be a risk of decertification at a later stage." *Glob. Crossing*, 225 F.R.D. at 460; *see also Christine Asia*, 2019 U.S. Dist. LEXIS 179836, at *49-50 (finding decertification risk weighed in favor of final approval, stating "a class certification order may be altered or amended any time before a decision on the merits").

Thus, in light of the risks inherent in continued litigation, the proposed Settlement of $4.5 million warrants approval.  *Advanced Battery*, 298 F.R.D. at 176 (reasoning that "the present value of a certain recovery at this time, compared to the slim chance for a greater one down the road, supports approval").

e)    **Defendants' Ability to Withstand a Greater Judgment**

When all other factors favor approval, this factor is not dispositive.  *See, e.g.*, *D'Amato*, 236 F.3d at 86; *Metlife Demutualization*, 689 F. Supp. 2d at 339 (*Grinnell* factor seven "is much less important than other factors").  This is because "a defendant is not required to 'empty its

16

coffers' before a settlement can be found adequate." *In re IMAX*, 283 F.R.D. at 191. Here, however, Defendants have continued to deny liability and the collectability of any potential judgment is questionable due to enforcement issues with China. ¶ 67. *See also*, *PPDAI Grp.*, 2022 U.S. Dist. LEXIS 11427, at *30 (considering risk of judgment enforceability and collection in China). Gridsum is no longer a publicly traded company, and information about its financial condition is no longer publicly available. ¶ 67; *Rodriguez*, 2023 U.S. Dist. LEXIS 26891, at *43 (noting that the company at issue no longer traded on NYSE). Further, the SEC filed a lawsuit against Gridsum and defendant Qi on September 7, 2023, which is likely to erode any collectible funds. ¶ 67.[5]

### f)    The Settlement Falls Well Within the Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks of Litigation

Given the complexities, risks, and expense inherent in continued litigation, the proposed Settlement is in the best interests of the Settlement Class. Importantly, it easily falls within the range of reasonableness. The last two *Grinnell* factors are typically analyzed together: "consider[ing] and weigh[ing] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *Grinnell*, 495 F.2d at 462-63. Determining reasonableness "does not involve the use of a mathematical equation[.]" *Bear Stearns*, 909 F. Supp. 2d at 269. Rather, the determination is whether the settlement falls within a "range of reasonableness" that "recognizes the uncertainties of law and fact" in the action and "the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d

---

[5] *See also* https://www.sec.gov/litigation/litreleases/lr-25822.

Cir. 1987) (the settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case").

Here, the Settlement provides an immediate cash recovery of $4.5 million. This favorable result is well-within the range of reasonableness given the risks discussed above. *Facebook*, 343 F. Supp. 3d at 414 ("Because Plaintiffs face serious challenges to establishing liability . . . consideration of Plaintiffs' best possible recovery must be accompanied by the risk of non-recovery."). The $4.5 million Settlement represents approximately 20.6% of the total estimated Section 10(b) damages of $21.8 million. ¶ 69. *See also* Declaration of Zachary Nye, Ph.D., ECF No. 292-4, at ¶¶14-15 (describing damages model and damages estimate).[6] As such, the recovery is substantially higher than the average recovery in securities class actions. *See* Ex. 7 at 25-26, Figs. 21 & 22 (Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review* (NERA Jan. 23, 2024)) (showing that median recovery in securities class actions from 2014 to 2023 ranged from 1.5% to 2.5% and that for cases with losses in the range of $20 million to $49 million, the median recovery from 2014 to 2023 was 5.1%); *Lea*, 2021 U.S. Dist. LEXIS 229314, at *29-30 (approving recovery of 5.3% considering the possibility of not succeeding in proving all misstatements); *Vaccaro*, 2017 U.S. Dist. LEXIS 205785, at *17 (6.5% recovery within range of reasonableness).

When considering the substantial risks, costs, and resulting delay of continued litigation discussed above, Plaintiffs respectfully submit that the Settlement represents a favorable recovery.

---

[6] As noted in ECF No. 292-4, Plaintiffs' damages expert estimates that the dismissed Settlement Class Period's Section 10(b) damages are $3.67 million, with the undismissed portion representing the bulk of the damages. *Id.* Further, the "damages estimate does not include damages for the dismissed Securities Act claims" as "damages under the Securities Act would largely be a subset of the Section 10(b) damages after accounting for the negative causation defense which limits damages to the decline in the price of Gridsum ADSs in response to the alleged corrective disclosures." *Id.* at n.21.

### 5.    The Remaining Rule 23(e)(2) Factors Support Final Approval[7]

#### a)    The Proposed Method for Distributing Relief Is Effective

This factor considers the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). As further detailed below, the proposed forms and methods of Notice meet the requirements of due process, Rule 23, and Section 21D(a)(7) of the Exchange Act, 15 U.S.C. § 78u-4(a)(7), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). The claims administration process for distribution of the Settlement Amount will proceed in the manner typical in securities class action settlements, overseen by Lead Counsel and Court-appointed Claims Administrator, RG/2, a well-known claims administrator with substantial experience in administering class action securities fraud settlements. *See* ECF No. 292-3 (RG/2 Declaration and résumé).

RG/2 will employ a well-established securities class action distribution process. Any potential claimant can submit a Claim Form by mail or e-mail. Each claimant's submission will be reviewed by RG/2 for eligibility determination, and claimants will be provided an opportunity to cure any deficiencies in their claims and request the Court review any Claim denial. *See* Stip.,¶ 7.11(d). Calculations of each claimant's "Recognized Claim" will be completed in accordance with the Court-approved Plan of Allocation and ultimately determine the *pro rata*

---

[7] With respect to Rule 23 (e)(2)(C)(iv), as discussed in the preliminary approval motion, the Parties entered into a Supplemental Agreement under which Defendants may terminate the Settlement in the event that requests for exclusion from the Settlement Class reach a certain threshold. *See* Stip., ¶ 11.5. This type of agreement is "standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia*, 2019 U.S. Dist. LEXIS 179836, at *54. It is also standard to keep such agreements confidential to "avoid the risk that one or more shareholders might use this knowledge to insist on a higher payout for themselves by threatening to break up the Settlement." *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 150292, at *23 (N.D. Cal. Sept. 4, 2018). If requested, the Supplemental Agreement will be submitted to the Court *in camera*.

distribution for each Settlement Class Member from the Net Settlement Fund. *Id.*, ¶ 7. Funds will be distributed to Authorized Claimants after the Effective Date and the passing of all other applicable deadlines, including Court approval. *Id. See also Christine Asia*, 2019 U.S. Dist. LEXIS 179836, at *53 (finding similar process fair and reasonable, stating "[t]his type of claims processing and method for distributing settlement proceeds is standard in securities and other class actions and is effective").

### b)      The Requested Attorneys' Fees Are Reasonable

As set forth in the Notice, Lead Counsel has applied for a fee of 33 ⅓% of the Settlement Fund for services rendered on behalf of the Settlement Class. Lead Counsel's accompanying Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Awards to Plaintiffs fully details the terms of the proposed attorneys' fees and explains the reasonableness of the fee request in light of the substantial work performed, results obtained, and risks in the litigation.[8] As detailed therein, the requested fee is reasonable in light of the work performed and the results obtained, and is consistent with other fee awards in comparable complex class actions. *See, e.g.*, *Noto*, 2023 U.S. Dist. LEXIS 187531, at *29 ("Courts in this Circuit routinely award attorneys' fees of around 33 1/3% of the common fund.") (collecting cases); *3D Sys.*, 2023 U.S. Dist. 231792, at *43 (awarding attorneys' fees of ⅓ of $4 million settlement); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014) (explaining that "[i]t is very common to see 33% contingency fees in cases with funds of less than $10 million); *Maley*, 186 F. Supp. 2d at 367-68 (awarding 33 ⅓% of $1.25 million settlement).

---

[8]  Both the United States Supreme Court and the Second Circuit recognize that counsel should be compensated for efforts expended in creating a common fund for the benefit of a class. *See, e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).

Further, Settlement Class Members have an opportunity to comment on Lead Counsel's fee request before the Settlement Hearing, and to date, no objections have been received.  ¶¶ 6, 8, 56, 87 ; Ex. 1 at ¶ 11.  Importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and pursuant to the Settlement Stipulation, the Settlement cannot be terminated based on any ruling on attorneys' fees.  Stip., ¶ 8.3.

**c)    The Settlement Treats Settlement Class Members Equitably Relative to Each Other**

The proposed Settlement treats Settlement Class Members equitably relative to one another.  Settlement Class Members are "treated equitably" when they "receive a pro rata share of the Net Settlement Fund" based on relative losses.  *Lea*, 2021 U.S. Dist. LEXIS 229314, at *32.  As discussed further immediately below, pursuant to the Plan of Allocation developed by Plaintiffs' expert in conjunction with Lead Counsel, each Authorized Claimant will receive their *pro rata* share of the Net Settlement Fund based on their purchases or acquisitions of Gridsum securities during the Settlement Class Period taking into account the timing of their purchases or acquisitions, among other things.  Plaintiffs and each Settlement Class Member are subject to the same formula for distribution of the Net Settlement Fund.

For all of the above reasons, Plaintiffs respectfully submit that the Court should grant final approval of the Settlement.

**C.    The Plan of Allocation Is Fair and Reasonable**

A plan of allocation, like the settlement itself, should be approved if it is fair, reasonable, and adequate.  *In re IMAX*, 283 F.R.D. at 192.  The allocation formula "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."  *Bear Stearns*, 909 F. Supp. 2d at 270.  "In particular, courts look primarily to the opinion

21

of counsel in determining the reasonableness and fairness of a plan of allocation." *Facebook*, 343 F. Supp. 3d at 414.

The proposed Plan of Allocation here, developed by Lead Counsel with the assistance of damages experts, is a fair and reasonable method for allocating the Net Settlement Fund among Settlement Class Members.  ¶¶ 70-72.  The Plan of Allocation provides for distribution of the Net Settlement Fund among Authorized Claimants on a *pro rata* basis based upon each Authorized Claimant's Recognized Loss.  ¶ 70; Ex. 1-B at 14-22 (Plan of Allocation).  Specifically, the Plan of Allocation calculates a "Recognized Loss" amount for each Settlement Class Member which depends on several factors, including when a Settlement Class member purchased or otherwise acquired shares of Gridsum, when the shares were sold, the purchase and sale prices, and the per share amount of artificial inflation in the price of the Company's stock.  Ex. 1-B at 14-22.  As set forth in the Notice, the Court dismissed the claims relating to the early part of the Settlement Class Period (September 22, 2016 through March 14, 2017), and therefore, those claims will be discounted by 90%.  ¶ 72; Ex. 1-B at 15.  Similar plans of allocation are routinely found to be fair, reasonable, and adequate, including those that use a discount for different types of claims.  *See, e.g.*, *Rodriguez*, 2023 U.S. Dist. LEXIS 26891, at 32-33 & n. 14 (approving similar plan of allocation with a 25/75 split between Exchange Act and Securities Act claims); *Facebook*, 343 F. Supp. 3d at 415 (approving plan of allocation as fair and reasonable where recovery for institutional investors was "substantially discounted" due to the fact that the "truth on the market defense is more likely to limit recovery when asserted against sophisticated institutional investors"); *Signet*, 2020 U.S. Dist. LEXIS 128998, at *40 (finding "a plan of allocation that reimburses class members based on the relative strength and value of their claims is reasonable");

*Glob. Crossing*, 225 F.R.D. 462 ("Pro-rata distribution of settlement funds based on investment loss is clearly a reasonable approach.").

Plaintiffs and Plaintiffs' Counsel believe the Plan of Allocation will result in a fair and equitable distribution of the Net Settlement Fund among eligible Settlement Class Members. The Plan of Allocation was fully described in the Notice, and to date, no objections to the Plan of Allocation have been received. ¶¶ 6, 8, 56; Ex. 1 at ¶ 11; *In re Veeco Instr. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85629, at *40 (S.D.N.Y. Nov. 7, 2007) (holding that a favorable reaction to plan of allocation supports approval). For these reasons, it is respectfully submitted that the Plan of Allocation is fair, reasonable, and adequate and should be approved by the Court.

### D. Notice to the Settlement Class Satisfied the Requirements of Rule 23, the PSLRA, and Due Process

The Notice provided to the Settlement Class satisfied the requirements of Rules 23(c)(2)(B) and 23(e), as well as requirements under the PSLRA and due process. Due process and Rule 23(c)(2)(B) direct that the notice be "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). To satisfy Rule 23(e) and due process, notice must be made "in a reasonable manner" (Fed. R. Civ. P. 23(e)(1)) "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" (*Guevoura Fund Ltd. v. Sillerman*, No. 1:15-cv-07192-CM, 2019 U.S. Dist. LEXIS 218116, at *34 (S.D.N.Y. Dec. 18, 2019)). *See also In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D. 156, 166 (S.D.N.Y. 2007) ("Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the

means likely to inform potential class members."). Here, both the Notice's substance and method of dissemination to potential Settlement Class Members satisfied these standards.

The Notice provided all of the required information, including, *inter alia*: (i) a description of the nature of the Action and claims asserted; (ii) the definition of the Settlement Class; (iii) the amount of the Settlement; (iv) the reasons for and material terms of the Settlement; (v) the Plan of Allocation; (vi) the procedures and deadline for submitting a claim; (vii) the maximum amount of attorneys' fees and expenses that will be sought; (viii) the time and manner for requesting an exclusion from the Settlement Class or objecting to the Settlement, Plan of Allocation, or the requested attorneys' fees, expenses, or Plaintiffs' awards; (ix) the date, time, and place of the Settlement Hearing; (x) the identity and contact information of the representatives of Lead Counsel and procedures for making inquiries; and (xi) the binding effect of a judgment on Settlement Class Members. *See* Ex. 1-B (Notice).

In accordance with this Court's Preliminary Approval Order, on January 16, 2024, RG/2 mailed 308 letter notices, using information garnered from RG/2's proprietary database to broker/nominees. Ex. 1 at ¶ 4. Following the initial mailings, RG/2 received additional names and addresses of potential Settlement Class Members and in the aggregate, has mailed a total of 6,399 Postcard Notices as of February 29, 2024. *Id.* at ¶ 7. Additionally, on January 30, 2024, the Summary Notice was issued over *PR Newswire*. *Id.* at ¶ 8.

The Postcard Notice directed potential Settlement Class Members to the Settlement website, www.gridsumsecuritiessettlement.com, which has been operative since January 12, 2024, and where downloadable versions of the long-form Notice and Claim Form are available. *Id.* at ¶ 9. A toll-free telephone helpline, 1-866-742-4955, 2021, with live operators during business hours, is also accessible to accommodate potential Settlement Class Members with questions about

the Action and the Settlement. *Id*. This combination of notice methods constituted the best practicable notice. *See, e.g.*, *Noto*, 2023 U.S. Dist. LEXIS 187531, at *20-21 (finding the same notice methods to be fair and adequate); *Advanced Battery*, 298 F.R.D. at 182, n.3 ("The use of a combination of a mailed postcard directing class members to a more detailed online notice has been approved by courts.")

In summary, the notice program complied with the requirements of Rule 23, the PSLRA, and due process.

## III.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (i) approve the Settlement as fair, reasonable, and adequate; (ii) approve the Plan of Allocation as fair and reasonable; and (iii) certify the Settlement Class for purposes of settlement only. Proposed orders will be submitted with the reply papers after the deadline for objections and exclusions has passed.

Dated:  March 4, 2024                       Respectfully submitted,

**BRAGAR EAGEL & SQUIRE, P.C.**

/s/ *Lawrence P. Eagel*
Lawrence P. Eagel
Marion C. Passmore
Melissa A. Fortunato
810 Seventh Avenue, Suite 620
New York, New York 10019
Telephone: (212) 308-5858
Facsimile:  (212) 214-0506
Email: eagel@bespc.com
         passmore@bespc.com
         fortunato@bespc.com

-and-

Badge Humphries (admitted *pro hac vice*)
**BRAGAR EAGEL & SQUIRE, P.C.**
2113 Middle Street, Suite 305
Sullivan's Island, South Carolina 29482
Telephone: (843) 883-7424
Email: humphries@bespc.com

*Attorneys for Lead Plaintiff William Barth and*
*Proposed Class Counsel*

 -and

**GAINEY McKENNA & EGLESTON**
Thomas J. McKenna
Gregory M. Egleston
501 Fifth Avenue, 19th Floor
New York, New York 10017
Telephone: (212) 983-1300
Facsimile:  (212) 983-0383
Email: tjmckenna@gme-law.com
        gegleston@gme-law.com

*Counsel for Plaintiff Xuechun Li*

## CERTIFICATE OF SERVICE

I hereby certify that, on March 4, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF System.

Executed on March 4, 2024

*/s/ Lawrence P. Eagel*