**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PEIFA XU, Individually and On Behalf of All Others Similarly Situated, | Civil Action No. 1:18-cv-03655 (GHW) |
| Plaintiff, | |
| v. | JUDGE GREGORY H. WOODS |
| GRIDSUM HOLDING INC., GUOSHENG QI, RAVI SARATHY, MICHAEL PENG ZHANG, and THOMAS ADAM MELCHER | |
| Defendants. | |

**DECLARATION OF LAWRENCE P. EAGEL IN**
**SUPPORT OF (1) PLAINTIFF'S MOTION FOR FINAL APPROVAL**
**OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION,**
**AND (2) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES,**
**REIMBURSEMENT OF LITIGATION EXPENSES, AND AWARDS TO PLAINTIFFS**

## TABLE OF EXHIBITS TO DECLARATION

| EX. # | TITLE |
|---|---|
| 1 | Declaration of Tina Chiango Regarding Dissemination of Notice to the Settlement Class |
| 1-A | Postcard Notice |
| 1-B | Notice |
| 1-C | RG/2 Cover Letter to Nominees |
| 1-D | E-mail Submission to DTCC LENS and Confirmation of Posting of Notice |
| 1-E | Proof of Publication of Summary Notice – *PR Newswire* |
| 2 | Declaration of Michelle Yoshida in Support of Final Approval of the Class Action Settlement |
| 3 | Declaration of Lawrence P. Eagel on Behalf of Bragar Eagel & Squire, P.C. in Support of Lead Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Awards to Plaintiffs |
| 3-A | Bragar Eagel & Squire, P.C. Lodestar Schedule |
| 3-B | Bragar Eagel & Squire, P.C. Expenses Schedule |
| 3-C | Bragar Eagel & Squire, P.C. Firm Résumé |
| 4 | Declaration of Thomas J. McKenna on Behalf of Gainey McKenna & Egleston. in Support of Lead Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Awards to Plaintiffs |
| 4-A | Gainey McKenna & Egleston Lodestar Schedule |
| 4-B | Gainey McKenna & Egleston Expenses Schedule |
| 4-C | Gainey McKenna & Egleston Firm Résumé |
| 5 | Declaration of William Barth |
| 6 | Declaration of Xuechun Li |
| 7 | Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review* (NERA Jan. 23, 2024) |
| 8 | *Rudani v. Ideanomics, Inc.*, No. 1:19-cv-6741 (S.D.N.Y. Jan. 25, 2022), ECF No. 132 |

| 9 | *Rupp v. Momo Inc.*, No. 1:19-cv-04433-GBD (S.D.N.Y. Aug. 4, 2021), ECF No. 80 |
|----|------|
| 10 | *Cullinan v. Cemtrex, Inc.*, No. 2:17-cv-01067 (E.D.N.Y. May 23, 2019), ECF No. 84 |
| 11 | *In re Nielson Holdings Plc. Sec. Litig.*, No. 1:18-cv-07143-JMF (S.D.N.Y. July 21, 2022), ECF No. 156 |
| 12 | Declaration of Thomas J. McKenna Regarding Rule 11 of the Federal Rules of Civil Procedure |
| 13 | Declaration of Lawrence P. Eagel Regarding Rule 11 of the Federal Rules of Civil Procedure |

I, Lawrence P. Eagel, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.     I am a partner and shareholder of the law firm of Bragar Eagel & Squire, P.C. ("Bragar Eagel"), Court-appointed Lead Counsel and counsel of record for Lead Plaintiff William Barth (together with additional named plaintiff Xuechun Li, "Plaintiffs"), in the above-captioned securities class action (the "Action").[1]  I have personally participated in, overseen, and monitored the prosecution of this Action and have otherwise been kept informed of developments in this litigation by attorneys working with me and under my supervision.  Thus, if called upon, I can testify to the matters set forth herein.

2.     I respectfully submit this Declaration in support of (1) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation, and (2) Lead Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Awards to Plaintiffs, both filed concurrently herewith.  The terms of the Settlement are set forth in the Stipulation.  The Court preliminarily approved the Settlement by its Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement, dated December 15, 2023 (the "Preliminary Approval Order").  ECF No. 293.

3.     Plaintiffs now seek final approval of the $4,500,000 Settlement for the benefit of the Settlement Class, as well as final approval of the Plan of Allocation and final certification of the Settlement Class for the purposes of settlement only.  Lead Counsel also seek an award of attorneys' fees in the amount of one-third (33 ⅓%) of the Settlement Fund (which, by definition, includes interest accrued thereon), reimbursement of litigation expenses of $309,186.87 plus

---

[1]  All capitalized terms that are not defined herein have the same meanings as set forth in the Stipulation and Agreement of Settlement dated December 1, 2023 (ECF No. 289-1) (the "Stipulation" or "Stip.").

interest accrued thereon, and awards to Plaintiffs in the aggregate of $30,000, comprised of $25,000 for Lead Plaintiff William Barth and $5,000 for named plaintiff Xuechun Li.

## I.    **INTRODUCTION**

4.    The settlement contemplated by the Stipulation (the "Settlement") provides for a payment of $4,500,000 in cash (the "Settlement Amount") in exchange for the release of all claims asserted by Plaintiffs against all defendants and completely resolves the Action.  The Settlement results from almost six years of litigation, and following arm's-length negotiations before mediator Michelle Yoshida, Esq. of Phillips ADR Enterprises, P.C ("the "Mediator").  On December 15, 2023, the Court entered an order preliminarily approving the Settlement as fair, reasonable, and adequate, preliminarily certifying the Settlement Class, directing notice of the Settlement to potential Settlement Class Members, and scheduling the Settlement Hearing (the "Preliminary Approval Order").  ECF No. 293.

5.    While Plaintiffs and Plaintiffs' Counsel[2] believe that the allegations have merit, Lead Counsel respectfully submits that the Settlement represents an excellent result for the Settlement Class in light of the significant risks in the Action.  The Settlement provides a considerable benefit to the Settlement Class by conferring an immediate recovery while avoiding the risks, delay and expenses of continued litigation, including the risks associated with foreign defendants, and that the Settlement Class could recover less than the Settlement Amount or nothing at all.  Weighed against those risks, the Settlement of $4.5 million is an excellent result for the Settlement Class.

---

[2] "Plaintiffs' Counsel" includes Bragar Eagel and additional counsel Gainey McKenna & Egleston ("GM&E").

6.      Additional evidence that the Settlement represents an excellent result for the Settlement Class is the fact that, as of the filing of this Declaration, Plaintiffs have not received a single request for exclusion and no objections to any aspect of the Settlement.

7.      Likewise, the Plan of Allocation, developed in consultation with Plaintiffs' damages experts, should be approved as fair, reasonable, and adequate as it fairly distributes the Net Settlement Fund in accordance with the claims in this litigation (dismissed or sustained) and the type of Gridsum Holding Inc. ("Gridsum" or the "Company") securities purchased or acquired (common stock or options/puts) during the Settlement Class Period.  It is substantively similar to plans that have been approved and used to allocate recoveries in other securities class actions.  As of the date of this Declaration, no Settlement Class Members have objected to the Plan of Allocation.

8.      Finally, the requested attorneys' fees in the amount of $1.5 million, or 33 ⅓%, of the Settlement Fund and reimbursement of Plaintiffs' Counsel's litigation expenses in the amount of $309,186.87, as well as an aggregate award to Plaintiffs of $30,000 for their representation of the Settlement Class, are reasonable and appropriate.  As explained in Lead Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Awards to Plaintiffs, and Supporting Memorandum (the "Fee Motion"), Lead Counsel's fee request is within the range of fee percentages frequently awarded in the Second Circuit and in comparable securities class actions and, is justified in light of the substantial benefits that Plaintiffs' Counsel conferred on the Settlement Class, the risks they undertook, the quality of their representation, and the fact that they pursued the case  even though this considerable all-cash Settlement was far from guaranteed at its outset.  Plaintiffs' Counsel expended considerable time and effort prosecuting the Action on a fully contingent basis and have advanced litigation and investigative

expenses in the expectation that, as is customary, they will be paid a percentage of the common fund created by their efforts as attorneys' fees and receive payment for their expenses. The requested fee results in a "negative" multiplier of 0.58, further supporting the reasonableness of the fee request. As of the date of this Declaration, there have been no objections to Lead Counsel's request for attorneys' fees, reimbursement of litigation expenses, or awards to Plaintiffs.

9.     Plaintiffs and Lead Counsel respectfully submit that the Settlement and Plan of Allocation are fair, reasonable, and adequate and should be approved. In addition, Lead Counsel respectfully submits that the requests for attorneys' fees, reimbursement of litigation expenses, and Plaintiffs' awards are fair and reasonable and should be approved.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Summary of the Claims and Allegations

10.     This is a federal securities class action which alleges in the operative complaint, the Third Amended Class Action Complaint (the "Complaint," "Compl.," or "TAC") violations of Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act") and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5) against Gridsum; its co-founder and Chief Executive Officer, Guosheng Qi ("Qi"); its co-Chief Financial Officer, Michael Peng Zhang ("Zhang'); its co-Chief Financial Officer, Ravi Sarathy ("Sarathy"); Thomas Adam Melcher ("Melcher"), a member of the Company's Board of Directors (the "Board") (together with Gridsum, Qi, Zhang, and Sarathy, the "Defendants"); certain other Company directors; Gridsum's auditor, PricewaterhouseCoopers Zhong Tian LLP ("PwC"); and Goldman Sachs (Asia) L.L.C., Citigroup Global Markets Inc., and Stifel, Nicolaus & Company,

who served as underwriters in connection with Gridsum's initial public offering (the "Underwriter Defendants").[3]  ECF No. 209.

11.    During the relevant period, Gridsum was a web analytics holding company that designed and developed sophisticated data analysis software for online marketing and digital intelligence applications for multinational and domestic enterprises and government agencies in China.  Compl., ¶¶ 2, 47-52.  The Company offered software that allowed customers to collect and analyze information that is collected, indexed, and stored in an organized manner.  *Id.*

12.    Gridsum conducted an initial public offering of American Depositary Shares ("ADSs")[4] in September 2016 (the "IPO"), and Gridsum's ADSs traded on the NASDAQ under the ticker symbol "GSUM" following the IPO.  Compl., ¶¶ 3-5, 24, 71-74.  In the IPO registration statement and prospectus (the "Offering Documents"), and in public statements and documents following the IPO, Gridsum reported financial information for 2015 and 2016 that was purportedly in compliance with U.S. Generally Accepted Accounting Principles.  Compl., ¶¶ 75-90, 192-201.

13.    As alleged in the TAC, Defendants made materially false and misleading statements and omissions regarding the Company's business, operational, and compliance policies in the Company's Offering Documents and throughout the Class Period.   Specifically, as alleged, Defendants made false and/or misleading statements and/or failed to disclose:  (i) that Gridsum was recognizing sales revenue on consignment transactions that were not sales; (ii) that Gridsum

---

[3]  As detailed further herein, the Court dismissed the Securities Act claims on February 23, 2021, along with defendants PwC, the Underwriter Defendants, and certain directors (collectively, the "Dismissed Defendants").

[4]  ADSs, also known as American Depositary Receipts ("ADRs"), are securities that represent shares of non-United States companies that are held by United States depositary banks outside of the United States.  ADSs allow United States investors to invest in non-United States companies and give non-United States companies easier access to United States capital markets.  *See* SEC Investor Bulletin: American Depositary Receipts, https://www.sec.gov/investor/alerts/adr-bulletin.pdf (accessed February 14, 2023).

failed to record accounts payable; (iii) that Gridsum failed to accrue certain expenses; (iv) that Gridsum failed to record certain costs; (v) that Gridsum misclassified certain financial statement items; (vi) the extent and magnitude of Gridsum's lack of effective internal control over financial reporting; (vii) that Gridsum and certain Individual Defendants were not appropriately addressing issues with the Company's financial reporting raised by its auditor; (viii) that the audit was not appropriately performed by the auditor in accordance certain auditing standards; (ix) that consequently, Gridsum's financial statements were inaccurate and misleading, and did not fairly present, in all material respects, the financial condition and results of operations of the Company; and (x) that as a result of the foregoing, Gridsum's public statements were materially false and misleading at all relevant times.  Compl., ¶¶ 7, 17, 91, 122-67, 202-10, 212.

14.    On April 23, 2018, the Company issued a press release announcing that the Company's audit report for the 2016 financial statements should no longer be relied upon, among other things.  Compl., ¶¶ 11, 99, 213.  As alleged, the April 23, 2018 press release was materially false and misleading because it omitted to disclose that, as later revealed, PwC "also advised that the issues identified raised questions related to its ability to rely upon the representations of management."  Compl., ¶¶ 11, 99, 214.

15.    On January 7, 2019, Gridsum issued restated financial restatements for the years ended December 31, 2015 and 2016, showing overstatements of revenues and assets and understatements of certain expenses, losses from operations, and net losses.  Compl., ¶¶ 14, 112-18, 206.  The restatements disclosed that during the Class Period the Company booked millions of RMBs of revenue on "sales" to sub-distributors.  Compl., ¶¶ 15, 113-21, 209.  As alleged, these "sales" were not true sales, but consignment transactions wherein Gridsum did not actually receive payment until the sub-distributors sold the services product to a third-party buyer.  *Id*.  As a result

of the improper recognition of revenue, Gridsum's 2016 revenues were materially overstated by as much as 9.2%. *Id*.

16.    Furthermore, the Company's financial statements for 2015 and 2016 materially misstated accounts payable, other certain costs and expenses, and contained classification errors. Compl., ¶¶ 16, 113-18, 210.  As a result of the misstatements, errors, and improper revenue recognition, Gridsum's net losses were understated by 26.5% and 45.6% for 2015 and 2016, respectively.  Compl., ¶¶ 16, 113-18, 206, 210.

### B.    Procedural History

17.    This litigation began on April 25, 2018, when Peifa Xu filed the initial securities class action complaint in the United States District Court for the Southern District of New York captioned *Xu v. Gridsum Holding Inc., et al.*, No. 1:18-cv-03655, on behalf of all persons and entities who purchased or otherwise acquired Gridsum's ADSs between April 27, 2017 and April 20, 2018, inclusive, seeking to recover damages for Exchange Act violations.  ECF No. 1.

18.    On June 25, 2018, a related putative securities class action was filed in the United States District Court for the Southern District of New York captioned *Li v. Gridsum Holding Inc., et al.*, No. 1:18-cv-05749, on behalf of all persons who purchased or otherwise acquired Gridsum securities between September 22, 2016 through April 20, 2018, both dates inclusive, seeking to recover damages for violations of the Exchange Act and the Securities Act.[5]

19.    On September 17, 2018, the Court consolidated the *Xu* and *Li* actions, and appointed William Barth as Lead Plaintiff and Bragar Eagel as Lead Counsel.  ECF No. 30.

---

[5] On July 2, 2018, a similar action alleging only Securities Act violations was filed in the Supreme Court of the State of New York captioned *Gordon, et al. v. Gridsum Holding Inc., et al.*, Index No. 653342/2018 (the "State Action").  The court presiding over the State Action stayed the case on April 10, 2019, finding that the federal action was filed first and should proceed first.  NYSCEF Doc. No. 46.  The Settlement will release all State Action claims.

20.     Plaintiffs filed the Amended Class Action Complaint on December 4, 2018, alleging violations of Sections 11 and 15 of the Securities Act, Sections 10(b) and 20(a) of the Exchange Act, and SEC Rule 10b-5 promulgated thereunder.  ECF No. 50.

21.     Gridsum filed its financial restatements with the SEC on January 7, 2019. Thereafter, Plaintiffs filed the Second Amended Complaint (the "SAC") on March 1, 2019, expanding the class period through January 7, 2019.  ECF No. 104.

22.     Pursuant to Judge Ramos' individual practices, the parties filed pre-motion to dismiss letters and responses in April of 2019.  ECF Nos. 109-12, 114, 117.

23.     On May 28, 2019, defendants Gridsum, Melcher, PwC, and the Underwriter Defendants[6] filed motions to dismiss the SAC.  ECF Nos. 144-46, 151-52, 154-56.  Gridsum and Melcher also filed a request for judicial notice.  ECF No. 147.  Plaintiffs opposed each motion to dismiss and the request for judicial notice.  ECF Nos. 159-63.

24.     Prior to the Court's ruling on the motions to dismiss the SAC, Plaintiffs filed a motion for alternative service on certain defendants located in China and Hong Kong on January 31, 2020.  ECF Nos. 186-89.  Certain defendants opposed the motion for alternative service (ECF Nos. 194-97) and Plaintiff filed an omnibus reply (ECF No. 199).

25.     One foreign individual defendant, Perry Lin Chui ("Chui") was served in the interim and he filed a pre-motion letter on February 13, 2020 (ECF No. 191), to which Plaintiffs responded on February 19, 2020 (ECF No. 192).

---

[6]  Plaintiffs also alleged claims against a number of additional individual defendants who resided in China or Hong Kong and did not file motions as they had not yet been served at the time.  Claims against PwC and the underwriters for Gridsum's IPO were dismissed by the Court as explained further herein.

26.     On March 30, 2020, the Court issued an Opinion & Order addressing the motion for alternative service and the motions to dismiss the SAC.  ECF No. 201.  The Court denied Plaintiffs' motion for alternative service and granted in part and denied in part the motions to dismiss the SAC.  *Id*.  Specifically, the Court denied Defendants request to dismiss the Exchange Act claims relating to Gridsum's 2016 financials and April 2018 press release but dismissed the Exchange Act claims relating to the Company's 2015 financials and all claims brought under the Securities Act.  *Id.*  The Court granted Plaintiffs leave to amend.  *Id.*

27.     On May 7, 2020, Plaintiffs filed the operative complaint in the Action—the Third Amended Complaint—alleging that Defendants, certain other Company directors, PwC, and the underwriters for the IPO violated Sections 11 and 15 of the Securities Act, Sections 10(b) and 20(a) of the Exchange Act, and SEC Rule 10b-5 promulgated thereunder.  ECF No. 209.

28.     On June 8, 2020, Gridsum, Melcher, Chui, PwC and the Underwriter Defendants filed motions to dismiss the Complaint.  ECF Nos. 210-18.  Plaintiffs filed an omnibus opposition to the motions to dismiss on July 24, 2020.  ECF No. 221.

29.     On February 23, 2021, the Court granted defendants' motions to dismiss the Complaint, dismissing Plaintiffs' Securities Act and Exchange Act claims relating to Gridsum's 2015 financials, but explicitly stated that the order did not alter the Court's previous March 2020 decision regarding the Exchange Act claims relating to 2016 financials and April 2018 press release.  ECF No. 236.  Claims against certain individual Company officer and director defendants were either dismissed by the Court or voluntarily dismissed pursuant to stipulations by Plaintiffs and defendants.  ECF Nos. 229, 236, 238, and 244.

30.     Gridsum and Melcher answered the Complaint on April 23, 2021.  ECF No. 239.

31.    Individual defendants Qi, Zhang and Sarathy had not been served at the time of the prior motions to dismiss filed by other defendants, and they filed a further partial motion to dismiss on June 3, 2021 (ECF Nos. 246-48), which Plaintiffs opposed on June 17, 2021 (ECF No. 249). The Court ruled on the partial motion to dismiss on August 29, 2022, granting the motion as to Sarathy and Zhang and denying it as to Qi.  ECF No. 255.

32.    Defendants Qi, Zhang and Sarathy answered the Complaint on September 12, 2022. ECF No. 257.

33.    Between October of 2022 and September of 2023, the Parties exchanged initial disclosures, served and responded to written discovery, engaged in protracted negotiations regarding the sufficiency of their respective discovery responses and the document discovery search terms, which negotiations ultimately led to an agreement and Defendants' initial production of documents.  Lead Plaintiff also collected and produced documents to Defendants.

34.    On February 17, 2023, Lead Plaintiff filed a motion for class certification (ECF Nos. 262-64), which Defendants opposed on May 12, 2023.  ECF Nos. 273-74.  On June 13, 2023, Lead Plaintiff filed a reply in further support of his motion.  ECF Nos. 280-281.  The motion is pending and has not been ruled upon by the Court.

35.    In connection with the motion for class certification, Lead Plaintiff, Lead Plaintiff's expert, and Defendants' expert were deposed.

**C.    Mediation and Settlement Negotiations**

36.    The Parties reached the proposed Settlement through a protracted, good faith, arm's-length negotiation facilitated by Michelle Yoshida, Esq.  *See also* Ex. 2 (Declaration of Michelle Yoshida in Support of Final Approval of the Class Action Settlement).

37.     On September 11, 2023, the Parties submitted to the Mediator and exchanged mediation statements detailing the strengths and weaknesses of their case, liability, and damages. *See also* Ex. 2 at ¶ 7.

38.     In the days prior to the in-person mediation session, the Parties separately participated in calls with the Mediator to discuss specific questions and issues raised by the mediation briefs. *See also id*.

39.     On September 21, 2023, counsel for the Parties participated in a full-day mediation session. *Id.* at ¶ 8. Plaintiffs and Defendants did not reach a resolution at the September 21, 2023 mediation; however, the Parties agreed to further discuss the possibility of settlement with the Mediator the following week. *Id.* at ¶ 9.

40.     Negotiations continued via Zoom, telephone and e-mail with the assistance of the Mediator for several weeks following the in-person session, leading to all Parties accepting a Mediator's proposal. *Id.* at ¶¶ 11-12.

41.     On October 17, 2023, the Parties notified the Court that they had agreed in principle to resolve all Claims in this Action and requested a stay on any decision on the outstanding motion for class certification. ECF No. 285.

42.     Subsequently, the Parties negotiated a Stipulation more fully documenting the Settlement, and prepared the class Notice, Postcard Notice, Summary Notice, Claim Form, and proposed orders for preliminary approval and final approval and entering final judgment. The Parties finalized and executed the Stipulation on December 1, 2023. ECF No. 289-1.

43.     Plaintiffs filed a motion for preliminary approval of settlement and accompanying documents on December 1, 2023 (ECF Nos. 287-89), and additional supplemental materials on December 14, 2023 (ECF Nos. 291-92).

III.    **SUMMARY OF THE SETTLEMENT AND NOTICE PROGRAM**

    A.    **Summary of the Settlement Terms**

44.    The proposed Settlement Class, stipulated to by the Parties, includes all Persons and entities who purchased or otherwise acquired Gridsum securities: (i) from September 22, 2016 through January 7, 2019, or (ii) pursuant and/or traceable to the Offering Documents issued and otherwise in connection with Gridsum's September 2016 initial public offering, ((i) and (ii) together, the "Class Period"), inclusive.  Stip., ¶ 1.40.  Excluded are Defendants, any previously named defendants in the Action, current and former officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which any excluded party has or had a controlling interest.  *Id.*  Also excluded from the Settlement Class will be any Person who or which timely and validly seeks exclusion from the Settlement Class. *Id.*

45.    Under the terms of the Settlement, in exchange for the releases of all claims against the Released Defendants Parties (*Id.* at ¶¶ 1.36, 1.37, 1.33, 3, the Defendants were required to pay, or cause to be paid, $4,500,000 into an Escrow Account within thirty calendar days of preliminary settlement approval (the "Settlement Fund").  *Id.* at ¶¶ 1.39, 1.42, 2.1.

46.    The Settlement Fund shall be used to pay Taxes and Tax Expenses, Notice and Administration Costs, any attorneys' fees and litigation expenses awarded by the Court, and any Award to Plaintiffs authorized by the Court, with the balance (the "Net Settlement Fund") to be distributed to Authorized Claimants in accordance with the Plan of Allocation, developed in consultation with Plaintiffs' experienced damages experts, to be approved by the Court.  *Id.* at ¶¶ 4, 7; Ex. 1-B (Notice).

**B.**     <u>The Court Has Preliminarily Approved the Settlement</u>

47.     On December 15, 2023, the Court issued the Preliminary Approval Order, preliminarily approving the proposed Settlement, finding certification of the Settlement Class likely, and directing dissemination of notice to Settlement Class Members.  ECF No. 293.

48.     The Court scheduled the Settlement Hearing for final approval of the Settlement, the Plan of Allocation, attorneys' fees and expenses, including Awards to Plaintiffs, final certification of the Settlement Class, and to hear any objections by Settlement Class Members, for April 3, 2024 at 2:00 p.m. ET.  Defendants have paid $4.5 million into the Escrow Account for the benefit of the Settlement Class.

**C.**     **Dissemination of Notice to the Class Was Adequate and**
        **<u>Accomplished in Accordance with the Preliminary Approval Order</u>**

49.     Attached hereto as Exhibit 1 is a true and correct copy of the Tina Chiango Declaration Regarding Dissemination of Notice to the Settlement Class) (the "Chiango Decl.") which sets forth the efforts undertaken by RG/2 Claims Administration LLC ("RG/2"), the Court-appointed Claims Administrator, to mail the Postcard Notice to potential Settlement Class Members and nominees, to publish the Summary Notice, and to establish the Settlement website.

50.     Pursuant to the Preliminary Approval Order, as of February 29, 2024, RG/2 has mailed 6,399 copies of the Postcard Notice to potential Settlement Class Members and their brokers and nominees.  Chiango Decl., ¶ 7.

51.     As in most class actions of this nature, the large majority of potential Settlement Class Members are beneficial purchasers whose securities are held in "street name" – *i.e.*, the securities are purchased by brokerage firms, banks, institutions, and other third-party nominees in the names of the respective nominees, on behalf of the beneficial purchasers.  *Id.* at ¶ 4.  RG/2 maintains a proprietary contact file for securities cases, with names and addresses of brokerage

13

firms, banks, other third-party nominees, and third-party claims filing groups (collectively, "Nominees") to which RG/2 mailed a cover letter, including language from the Postcard Notice. *Id.*; Ex. 1-C.

52.    The Postcard Notice directed potential Settlement Class Members to the Settlement website, www.gridsumsecuritiessettlement.com, where downloadable versions of the long form Notice and Claim Form are available.  *Id.* at ¶ 9, Ex. 1-A.  The website became operative on January 12, 2024, and is accessible 24 hours a day, 7 days a week.  *Id.* at ¶ 9.

53.    The Notice provided, *inter alia*:  (i) a description of the nature of the Action and claims asserted; (ii) the definition of the Settlement Class; (iii) the amount of the Settlement; (iv) the reasons for and material terms of the Settlement; (v) the Plan of Allocation; (vi) the maximum amount of attorneys' fees and expenses that will be sought; (vii) the time and manner for requesting an exclusion from the Settlement Class or objecting to the Settlement, Plan of Allocation, or the requested attorneys' fees, expenses, or Awards to Plaintiffs; (viii) the date, time, and place of the Settlement Hearing; (ix) the identity and contact information of the representatives of Lead Counsel and procedures for making inquiries; and (x) the binding effect of a judgment on Settlement Class Members.  *See* Ex. 1-B (Notice)

54.    RG/2 also arranged for the Summary Notice to be transmitted over *PR Newswire* on January 30, 2024.  Chiango Decl., ¶ 8, Ex. 1-E.

55.    In addition, RG/2 established and continues to maintain a toll-free telephone number for Settlement Class Members with a live operator during regular business hours, as well as an option to leave a message after hours.  *Id.* at ¶ 9.

56.    The deadline to submit a request for exclusion or an objection is March 4, 2024. *See* Ex. 1-B.  To date Plaintiffs have received no requests for exclusion (Chiango Decl., ¶ 10), and

no objections to the Settlement, Plan of Allocation, Settlement Class certification, or Lead Counsel's request for attorneys' fees and expenses, or the proposed Awards to Plaintiffs (*id.*, ¶ 11).

57.    RG/2 will submit a supplemental declaration addressing any exclusions or objections, if any are received, once the March 4, 2024 deadline has passed.  Similarly, Plaintiffs will address any exclusions or objections in the reply which is to be filed with the Court on or before March 27, 2024.

## IV.    <u>THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE</u>

58.    In light of the considerations discussed in Plaintiffs' accompanying Motion for Final Approval of Class Action Settlement and Plan of Allocation, and Supporting Memorandum (the "Final Approval Motion"), Plaintiffs and Plaintiffs' Counsel submit that the Settlement is fair, reasonable, and adequate, satisfies the standards of Federal Rule of Civil Procedure 23 and the Second Circuit, and provides a significant recovery for the Settlement Class.

59.    The Settlement was only achieved after arm's-length negotiations between well-informed and experienced counsel on both sides, as Defendants are represented by a prominent, experienced law firm, and overseen by an experienced mediator.

60.    Prior to Settlement, Plaintiffs and Plaintiffs' Counsel had a well-developed understanding of the strengths and weaknesses of the case, enabling them to appropriately evaluate the Settlement's fairness, reasonableness, and adequacy.  More specifically, prior to Settlement, Plaintiffs' Counsel had, among other things: (i) analyzed, *inter alia*, Gridsum's public filings with the SEC, press releases, conference call transcripts, and other reports and news articles concerning Gridsum; (ii) consulted with experts on accounting, market efficiency, loss causation, and damages; (iii) drafted three detailed amended complaints; (iv) fully analyzed and responded to eight separate motions to dismiss addressing complex issues on falsity, materiality, and scienter; (v) researched and drafted a motion and reply in support of alternative service; (vi) researched and

drafted a motion and reply in support of class certification; (vii) conducted discovery, including reviewing and analyzing Defendants' documents in response to document requests and other written discovery, producing documents and responding to Defendants' written discovery, subpoenaing documents from Defendants' experts' deposition and reviewing the same, taking and defending expert depositions and defending Lead Plaintiff's deposition, and engaging in extensive search term and other discovery negotiations in English and Chinese; (viii) drafted and exchanged a detailed mediation statement setting forth the facts and strengths of Action and potential damages and fully analyzed Defendants' detailed mediation statement. *See also supra* at Sections II.B. and II.C.

61.    The immediate benefits of the proposed Settlement outweigh the substantial risks, delay, and expense of continued litigation.  Although, based on the investigation and record, Plaintiffs and Plaintiffs' Counsel believe their claims have merit, there are also uncertainties and risks in continuing the litigation.

62.    If litigation were to proceed, Plaintiffs would first have to prevail on their outstanding motion for class certification which is a "battle of experts" in which there is no guarantee of Plaintiffs' success, and overcoming Defendants' arguments, among others, that Gridsum's securities did not trade in an efficient market and that because primarily affirmative misrepresentations were alleged, Plaintiffs could not rely on *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972).

63.    Even if successful on the motion for class certification, Defendants would likely challenge class certification and move to decertify all or part of the class.  The possibility of years of extensive fact and expert discovery and depositions existed, in addition to contested motions for summary judgment, and a trial, with substantial expenditures of time and money.  Defendants

would be expected to mount a vigorous defense at trial and further litigation would be expensive, complex, and protracted.

64.    While Plaintiffs believe their claims would be borne out by the evidence, Plaintiffs' partial success in overcoming Defendants' motions to dismiss highlights some of the issues Plaintiffs would face.  The Court already found materiality lacking in dismissing the statements alleged to be false relating to Gridsum's 2015 financial statements, and Defendants vehemently contested all other issues.  Defendants articulated defenses to Plaintiffs' allegations that the Court or a jury may have accepted at later stages, with for example, Defendants arguing that the 2016 financial restatement was immaterial, only resulting from a change in revenue recognition methodology for revenues in a new business line.  Defendants would further contend that the April 2018 press release was not false or misleading, but disclosed all that was required under the law.

65.    Plaintiffs would not only have to establish falsity, materiality, scienter, and loss causation, but also bear the burden of proving damages.  It is well established that loss causation and damages are complicated issues, often requiring testimony from financial experts and often reduced to a "battle of the experts."  A jury's reaction to conflicting expert testimony is unpredictable, and Lead Counsel recognized the possibility that the jury could have been swayed by Defendants' experts and awarded little to no damages.

66.    Further, if Plaintiffs prevailed on the motion for class certification, on an expected motion for summary judgment, and at trial, Defendants would likely appeal one or more of the decisions.  The appeals process can go on for months or even years, significantly prolonging the Action and may have ultimately led to a smaller recovery, or no recovery at all.

67.    The fact that Gridsum is headquartered in China would add to the cost and delay caused by, for example, the need for translations and depositions outside of the United States.

Most Defendants are in located in China making the collectability of any potential judgment is questionable due to enforcement issues with China. Gridsum is no longer a publicly traded company, and information about its financial condition is no longer publicly available. And the SEC filed a lawsuit against Gridsum and defendant Qi on September 7, 2023, which may also erode any collectible funds.[7]

68.    In contrast to the foregoing, the Settlement provides an immediate and certain benefit to the Settlement Class in the form of a cash payment of $4.5 million. Plaintiffs' Counsel, having evaluated the substantial risk, time, and expense required to prosecute this Action through trial and appeals, strongly believes that the Settlement is an excellent result for the Settlement Class.

69.    In consultation with their damages experts, Plaintiffs estimated that the Settlement provides recovery of 20.6% of the total estimated damages of $21.8 million for the Section 10(b) claims, including the early Settlement Class Period claims dismissed by the Court, using a Section 10(b) two-trader damages model. *See also* Declaration of Zachary Nye, Ph.D., ECF No. 292-4, at ¶¶ 14-15 (describing damages model and damages estimate).[8] The $4.5 million Settlement is well within the range of reasonableness given the risks discussed herein and in the accompanying Final Approval Motion, and offering immediate relief for Settlement Class Members. As such, the resolution of the Action with the recovery of $4,500,000 is fair, adequate, and reasonable.

---

[7] *See* https://www.sec.gov/litigation/litreleases/lr-25822.

[8] As noted in ECF No. 292-4, Plaintiffs' damages expert estimates that the dismissed Settlement Class Period's Section 10(b) damages are estimated $3.67 million, with the undismissed portion representing the bulk of the damages. *Id.* Further, the "damages estimate does not include damages for the dismissed Securities Act claims" as "damages under the Securities Act would largely be a subset of the Section 10(b) damages after accounting for the negative causation defense which limits damages to the decline in the price of Gridsum ADSs in response to the alleged corrective disclosures." *Id.* at n.21.

## V.        THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE

70.     As stated in the Postcard Notice and the long form Notice available on the Settlement website, Settlement Class Members who wish to participate in the Settlement must submit a Claim Form by May 15, 2024.  Exs. 1-A and 1-B.  The Notice explains that the Net Settlement Fund, including any interest earned thereon, after deduction of certain enumerated fees and expenses, shall be paid to Authorized Claimants on a *pro rata* basis based upon each Authorized Claimant's Recognized Loss according to the Court-approved Plan of Allocation.  *E.g.*, Ex. 1-B at 14-22.

71.     Plaintiffs and Lead Counsel believe that the proposed Plan of Allocation will result in a fair and equitable distribution of the Settlement proceeds among Settlement Class Members who suffered losses as a result of the conduct alleged in the Action similar to any result if Plaintiffs were successful at trial.  Lead Counsel developed the Plan of Allocation in consultation with an independent expert with the goal of distributing net settlement funds to eligible Settlement Class Members in a fair and reasonable manner relative to their *pro rata* losses.

72.     Specifically, the Plan of Allocation calculates a "Recognized Loss" amount for each Settlement Class Member which depends on several factors, including when a Settlement Class Member purchased or otherwise acquired shares of Gridsum, when the shares were sold, the purchase and sale prices, and the per share amount of artificial inflation in the price of the Company's stock.  *Id.*  As set forth in the Notice, the Court dismissed the claims relating to the early part of the Settlement Class Period (September 22, 2016 through March 14, 2017), and therefore, those claims will be discounted by 90%.  *Id.* at 15.

## VI.    <u>SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED</u>

73.     The Court's Preliminary Approval Order stated that the "the prerequisites of class action certification under Federal Rules of Civil Procedure 23(a) and 23(b)(3) have been satisfied

for the Settlement Class." *See* ECF No. 293 at 2.  There have been no changes to alter the propriety

of class certification for settlement purposes.

## VII.    LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND EXPENSES IS REASONABLE AND SHOULD BE APPROVED

### A.    The Fee Application

74.    As compensation for their efforts, Lead Counsel requests an award of attorneys'

fees in the amount of 33 ⅓% of the Settlement Fund, and reimbursement of $309,186.87 in

expenses reasonably incurred in the prosecution and settlement of the Action.  *See* Fee Motion

filed herewith.  Plaintiffs' Counsel have vigorously prosecuted this case on a fully contingent basis

for six years without any compensation whatsoever and incurred substantial expenses without any

guarantee of success.

75.    As discussed in the Fee Motion, use of the percentage-of-fund method in

determining the appropriate fee recovery is the preferred method in the Second Circuit as it directly

aligns the interests of the class and counsel and incentivizes attorneys to take undesirable cases.  It

is also supported by the Supreme Court and the PSLRA.

76.    The requested fee is well within the range of fees awarded by courts in the Second

Circuit and in comparable securities class actions.  *See* Fee Motion.

77.    Based on the time and labor expended by Plaintiffs' Counsel, the amount involved

and results achieved, the risks and complexities of the litigation, the quality of representation, the

contingent nature of the representation, and public policy considerations, Lead Counsel

respectfully submits the requested fee award is fair and reasonable and should be approved by the

Court.

B.    **Plaintiffs' Counsel's Work and Expertise**

78.    Plaintiffs' Counsel devoted significant time and effort prosecuting this Action and achieving the Settlement, supporting the requested fee.  As discussed above, prior to reaching the agreement in principle to settle the Action, Plaintiffs' Counsel had, among other things: (i) reviewed and analyzed, *inter alia*, Gridsum's SEC filings, press releases, and conference call transcripts, analyst reports, and news articles concerning Gridsum; (ii) drafted the detailed Amended Complaint, SAC, and TAC; (iii) analyzed and addressed the multiple motions to dismiss arguments; (iv) analyzed and addressed Defendants' arguments in opposition to class certification; (v) reviewed and analyzed Defendants' responses to document requests and interrogatories; (vi) reviewed and analyzed Defendants' initial productions of documents; (vii) defended and taken class representative and expert depositions; (viii) consulted with experts on accounting, market efficiency, loss causation, and damages issues; (ix) drafted and exchanged a detailed mediation statement setting forth the facts and strengths of the Action and potential damages; and (x) engaged in a full-day mediation session before the Mediator and participated in weeks of subsequent negotiations.

79.    Lead Counsel also consulted with experts regarding the Plan of Allocation and prepared the documents required for preliminary and final approval of the Settlement.  Lead Counsel has expended time in overseeing the Notice process and will continue to expend necessary time and resources in preparing for and appearing at the final Settlement Hearing and ensuring the finalization of the claims process.

80.    The expertise and experience of Plaintiffs' Counsel is an important factor to be weighed in assessing a fair fee.  Plaintiffs' Counsel have extensive experience prosecuting

securities class actions and other complex litigation.  *See* Exs. 3-C and 4-C (firm résumés); ECF No. 292 at ¶¶ 27-28.

81.    At all times, Plaintiffs' Counsel provided comprehensive and focused efforts to achieve the best possible results for the Settlement Class, with no certainty of reimbursement for their time.  As set forth herein and by the lodestar reports of Plaintiffs' Counsel (Exs. 3-A and 4-A) and summarized below, Plaintiffs' Counsel expended 3,190.25 hours for a total lodestar of $2,594,252.50.[9]  The hourly rates for Plaintiffs' Counsel range from $550 to $650 for associates, from $875 to $995 for partners, and for professional staff from $200 to $375.  *See* Exs. 3-A and 4-A.  These rates are comparable to those normally charged by securities action law firms and normally charged in the community where the attorneys practice.  *See also* Fee Motion.

| LAW FIRM | HOURS | LODESTAR |
|---|---|---|
| Bragar Eagel | 2,961.25 | $2,405,151.25 |
| GM&E | 229.00 | $189,101.25 |
| **TOTAL** | **3,190.25** | **$2,594,252.50** |

82.    Plaintiffs' Counsel total lodestar is $2,594,252.50, and the requested one-third of the Settlement Fund, or $1.5 million, equates to a negative multiplier of 0.58, which is well below the typical range of multipliers routinely approved by courts in securities class actions and other complex litigation in this Circuit.  *See* Fee Motion.  Moreover, the lodestar multiplier does not include additional time that will be expended in completing the claims process.

C.    **Standing and Caliber of Opposing Counsel**

83.    The quality of the work performed by Plaintiffs' Counsel in attaining the Settlement should also be evaluated in light of the quality of the opposition.  Defendants were represented by

---

[9] Plaintiffs' Counsel expect that any fee awarded will be divided 85% to Bragar Eagel and 15% to GM&E.

experienced and qualified attorneys well-versed in securities litigation at Cooley LLP.  In the face of this knowledgeable and formidable opposition, Lead Counsel was nevertheless able to develop a case that was sufficiently strong to persuade the Defendants to settle it on terms that are favorable to the Settlement Class.

### D.    The Risks of Contingent Litigation

84.    Plaintiffs' Counsel undertook and prosecuted this Action on an entirely contingent basis with no guarantee of any compensation.  Plaintiffs' Counsel knew from the outset that they would expend a substantial amount of time prosecuting this Action yet receive no compensation if the Action ultimately proved unsuccessful.  Thus, the contingent nature of payment of fees and expenses and the risks and complexity of the Action should be given substantial weight by the Court in considering the instant application for fees and expenses.

85.    As described above, this Action involved serious legal and practical hurdles that could have resulted in no recovery at all.  Continued litigation would have entailed significant risks to the Settlement Class, as the Action could be derailed in any number of ways before a final judgment in Plaintiffs' favor was entered (and withstood possible appeal).  Moreover, this Action involves increased complexities and risks because the Company, most individual defendants, and most of the documentary evidence are located in China.

86.    As a result of consistent and persistent efforts in the face of substantial risks and uncertainties, Plaintiffs' Counsel achieved a significant recovery for the benefit of the Settlement Class.

### E.    The Reaction of the Settlement Class to the Requested Fee

87.    As discussed above, the Postcard Notice has been mailed to 6,399 potential Settlement Class Members and their brokers and nominees, and the Notice contains information

regarding the 33 ⅓% fee award requested by Lead Counsel.  As of the date of this Declaration, there have been no objections to the proposed fee request.

**F.    Payment of the Requested Expenses and Costs is Fair and Reasonable**

88.    Lead Counsel is also moving for payment of $309,186.87 in unreimbursed litigation expenses reasonably and actually incurred in connection with commencing and prosecuting the claims against Defendants, as outlined in the accompanying declarations and summarized below.  *See* Exs. 3-B and 4-B.  Pursuant to the Preliminary Approval Order, Lead Counsel notified Settlement Class Members that they would seek a maximum of $600,000 in expenses, inclusive of Plaintiffs' awards.  *See, e.g.*, Ex. 1-B (Notice).  Thus, Plaintiffs' Counsel's requested expenses, when combined with Plaintiffs' requests for an incentive award, are far lower than the maximum $600,000 listed in the Notice.

| LAW FIRM | EXPENSES |
|---|---|
| Bragar Eagel | $307,892.62 |
| GM&E | $1,294.25 |
| **TOTAL EXPENSES** | **$309,186.87** |

89.    The expenses requested are reflected in the records of Plaintiffs' Counsel, prepared in the normal course of business and are an accurate record of the expenses incurred.  *See* Exs. 3 and 4, at ¶ 8.  The expenses noted are reasonable and were incurred for items necessary to the prosecution of the Action.  The expenses were incurred largely in conjunction with experts, mediation, private investigation, service of process costs and travel costs.

90.    From the beginning of the case, Plaintiffs' Counsel were aware that they might never recover any of their expenses, and, at the very least, would not recover anything until the Action was successfully resolved.  Plaintiffs' Counsel also understood that, even assuming the case was ultimately successful, reimbursement for expenses would not compensate them for the

lost use of funds advanced by them to prosecute this Action. Thus, Plaintiffs' Counsel were motivated to, and did, take steps to assure that only necessary expenses were incurred for the vigorous and efficient prosecution of the case.

91.     In view of the complex nature of the Action, the litigation expenses incurred were reasonable and necessary to pursue the interests of the Settlement Class. Accordingly, Lead Counsel respectfully submits that the request for expenses be granted.

## VIII.   PLAINTIFFS' REQUEST FOR AWARDS IS <u>REASONABLE AND SHOULD BE APPROVED</u>

92.     Plaintiffs each seek incentive and reimbursement awards in recognition of their time and effort expended as class representatives, with Lead Plaintiff William Barth requesting an award of $25,000 and named plaintiff Xuechun Li requesting an award of $5,000.

93.     As detailed in the Plaintiffs' declarations, each devoted significant time and effort actively participating in the litigation. Among other things, both Plaintiffs: (i) regularly communicated with counsel concerning the Action; (ii) remained fully informed about developments in the case; (iii) reviewed pleadings and materials filed with the Court; (iv) discussed the progress and ultimate settlement of the Action with counsel; and (v) approved the Settlement. Ex. 5 at ¶ 6 and Ex. 6, ¶ 8. Lead Plaintiff William Barth spent additional substantial time and effort on the Action, as reflected in his declaration by, preparing for his deposition, traveling from his residence in Nevada to New York City for his deposition, and sitting for that deposition. Ex. 5 at ¶ 6.

94.     Plaintiffs should be compensated for their time and efforts in participating in this litigation. Plaintiffs conferred substantial benefit upon the Settlement Class due to their significant efforts as identified in the paragraph above and in their declarations. Thus, Lead Counsel believes the requested awards of $25,000 for Lead Plaintiff Barth and $5,000 for Xuechun Li ($30,000 in

total) for their time and efforts spent on behalf of the Settlement Class would be fair and reasonable. No objections to the requested aggregate award of $30,000 have been received from any Settlement Class Member.

## IX.    **CONCLUSION**

95.    For all the foregoing reasons, Plaintiffs and Lead Counsel respectfully request that the Final Approval Motion and Fee Motion be granted.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on March 4, 2024 at New York, New York.

By: _____
Lawrence P. Eagel